Joe Ann PUSTEJOVSKY, Individually and as Personal Representative of the Heirs and Estate of Henry J. Pustejovsky, Jr., Deceased, Appellant,

v.

PITTSBURGH CORNING CORPORA-TION, Owens–Corning Fiberglas Corporation, and Rapid–American Corporation, Appellees.

No. 04–97–00768–CV.

Court of Appeals of Texas, San Antonio.

Sept. 30, 1998.

Janice Pennington, Lisa R. Kivett, Laurie J. Meggesin, Brent Marcus Rosenthal, Baron & Budd, P.C., Dallas, for Appellant.

Rick W. Thamm, Bean & Manning, L.L.P., Houston, Joseph Casseb, Goode, Casseb & Jones, San Antonio, Kevin F. Risley, Gilpin, Paxson & Bersch, L.L.P., Houston, Jeffrey S. Boyd, Thompson & Knight, Austin, G. Luke Ashley, Thompson & Knight, P.C., Dallas, Susan M. Hull, Jenkens & Gilchrist, P.C., Dallas, for Appellees.

Before RICKHOFF, DUNCAN and ANGELINI, JJ

## OPINION

RICKHOFF, Justice.

In this summary judgment appeal, we must determine when a cause of action for asbestos-caused cancer accrued. The plaintiff contends that the cause of action accrued once the victim knew or reasonably should have known that he had cancer. We conclude, however, that the cause of action accrued once the victim knew or reasonably should have known that he suffered from some injury caused by occupational exposure to asbestos. Under this standard, the plaintiff's cause of action accrued at least twelve years before this suit was filed. Accordingly, the trial court properly granted summary judgment against the plaintiff based on the statute of limitations.

### FACTUAL AND PROCEDURAL BACKGROUND

Henry J. Pustejovsky, Jr., worked for Alcoa Aluminum in Rockdale, Texas, from 1954 to 1979. In the course of that employment, he was exposed to asbestos. In 1982, after learning that breathing asbestos fibers could be harmful, Mr. Pustejovsky consulted a doctor to determine whether exposure to asbestos had affected his health. The doctor found scarring on Mr. Pustejovsky's lungs and diagnosed him with asbestosis. The doctor also informed Mr. Pustejovsky that the asbestosis resulted from his years of working around asbestos products. Upon receiving this diagnosis, Mr. Pustejovsky sued Johns–Manville Corporation. That suit was settled out of court for approximately $25,000.

In September 1994, Mr. Pustejovsky began experiencing shortness of breath and fatigue. He was then diagnosed with terminal meso-

thelioma, which is cancer of the lining of the lungs. Like asbestosis, mesothelioma is caused by breathing asbestos fibers. According to the plaintiff's expert, however, the two conditions are separate and distinct diseases. There is no causal connection between asbestosis and mesothelioma: mesothelioma is not dependent on a precondition of asbestosis, and asbestosis does not necessarily result in mesothelioma. Less than fifteen percent of those who suffer from asbestosis will ever develop malignant mesothelioma. The average latency period for asbestosis is fifteen to twenty-five years, while the average latency period for mesothelioma is thirty to forty years. It is undisputed that when Mr. Pustejovsky was diagnosed with asbestosis, he did not know that his exposure to asbestos could eventually cause him to develop cancer.

In November 1994, Mr. Pustejovsky joined with three other plaintiffs and filed suit against several suppliers of asbestos products, seeking to recover for injuries resulting from exposure to their products. In August 1995, Mr. Pustejovsky died and his wife, Joe Ann Pustejovsky (hereinafter "the plaintiff"), was substituted as a plaintiff, individually and as representative of her husband's estate. Defendants Owens–Corning Fiberglas Corporation, Pittsburgh Corning Corporation, and Rapid–American Corporation (hereinafter "the defendants") filed motions for summary judgment, asserting that the plaintiff's claim is barred by limitations. The trial court granted the motions and severed the plaintiff's claim against these three defendants from the remaining claims.

### STANDARD OF REVIEW

We review a summary judgment de novo. See Sasser v. Dantex Oil & Gas, Inc., 906 S.W.2d 599, 602 (Tex.App.—San Antonio 1995, writ denied). We will uphold a summary judgment only if the summary judgment record establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. See TEX.R. CIV. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.1995); Nixon v. Mr. Property Management Co., 690 S.W.2d

546, 548–49 (Tex.1985). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to prove conclusively the elements of that defense. *See Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997). When the plaintiff pleads the discovery rule as an exception to limitations, the defendant has the burden of negating that exception as well. *See id.*

### THE STATUTE OF LIMITATIONS & THE DISCOVERY RULE

■ A two-year limitations period applies to this suit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.1998); *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343 (Tex.1992); *Reagan v. Vaughn,* 804 S.W.2d 463, 468 (Tex.1990); *Upjohn Co. v. Freeman,* 885 S.W.2d 538, 541 (Tex.App.—Dallas 1994, writ denied). The applicable statute provides that "a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.1998). Generally, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later or all resulting damages have not yet occurred. *See S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996). The "discovery rule" is an exception to this rule. *See id.* When the discovery rule applies, it defers accrual until the plaintiff knows or in the exercise of reasonable diligence should know of the wrongful act and the resulting injury. *See id.*

■ The supreme court recently held that the discovery rule applies to claims for latent occupational diseases. *See Childs v. Haussecker,* 974 S.W.2d 31, 37–38 (1998). Accrual is deferred in such cases "until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related." *Id.* at 39–40. In this case, there is no dispute that asbestosis and mesothelioma are latent occupational diseases; the dispute concerns the proper application of the discovery rule to the mesothelioma claim.

### THE PARTIES' ARGUMENTS

The defendants contend the plaintiff's cause of action accrued no later than 1982. In that year, Mr. Pustejovsky learned he had been injured—he had contracted asbestosis—as a result of occupational exposure to asbestos. The defendants assert that the plaintiff was required to sue for any damages resulting from the asbestos exposure within two years of the asbestosis diagnosis. They argue that this result is mandated by the "single-action rule," which provides that there is but one cause of action for all damages arising out of a defendant's wrongful act. *See Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1137 (5th Cir.1985).

The plaintiff counters that the mesothelioma claim accrued when Mr. Pustejovsky knew, or in the exercise of reasonable diligence should have known, that he had mesothelioma. She points out that the majority of jurisdictions that have considered this issue have declined to apply the single-action rule to latent disease claims. *See Marinari v. Asbestos Corp., Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021, 1023–24 (Pa.Super.Ct.1992). Instead, they recognize separate causes of action for each discrete illness caused by the same toxic exposure. The limitations period for each cause of action thus commences when the discrete illness becomes discoverable. The plaintiff submitted summary judgment evidence that asbestosis and mesothelioma are medically distinct diseases, that Mr. Pustejovsky first experienced symptoms of mesothelioma only two months before he instituted this suit, and that he did not know asbestos could cause cancer until he was diagnosed with mesothelioma. Based on this evidence, the plaintiff argues that a fact question exists regarding whether asbestosis and mesothelioma are medically distinct diseases and regarding when Mr. Pustejovsky knew, or in the exercise of reasonable diligence should have known, that he had mesothelioma. She therefore argues that the trial court erred by granting summary judgment. *See Rowntree v. Hunsucker,* 833 S.W.2d 103, 106 (Tex.1992) (when summary judgment

proceeding involves dispute regarding the relationship between two medical problems, movant must resolve that issue as part of its burden of proof).

## THE SINGLE-ACTION RULE & LATENT DISEASES

■ The single-action rule rests upon the principle that only one cause of action exists for each breach of a legal duty. *See Gideon,* 761 F.2d at 1137; *Potts v. Celotex Corp.,* 796 S.W.2d 678, 682 (Tenn.1990). A separate cause of action does not arise each time a separate type of damage manifests itself. *See Potts,* 796 S.W.2d at 682. The purpose of the single-action rule is to facilitate repose, retard the litigation of stale claims, and conserve judicial resources. *See Wilson v. Johns–Manville Sales Corp.,* 684 F.2d 111, 119–21 (D.C.Cir.1982).

■ Texas courts have repeatedly and consistently followed the single-action rule. *See, e.g., Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967); *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438, 440 (Tex.1940); *Webb v. Persyn,* 866 S.W.2d 106, 107 (Tex.App.—San Antonio 1993, no writ); *Clade v. Larsen,* 838 S.W.2d 277, 282–83 (Tex.App.—Dallas 1992, writ denied); *Millers Mut. Fire Ins. Co. v. Mitchell,* 392 S.W.2d 703, 707 (Tex.Civ. App.—Tyler 1965, no writ). As a species of res judicata, the rule prohibits splitting a cause of action and trying it piecemeal. *See Webb,* 866 S.W.2d at 107. As applied to the statute of limitations, it requires a plaintiff to file suit when facts come into existence authorizing a judicial remedy, regardless of whether the full extent of damages is known. *See Clade,* 838 S.W.2d at 282–83.

■ The single-action rule applies in Texas to cases governed by the discovery rule. The supreme court has stated:

[I]n all discovery rule cases, a cause of action accrues when the plaintiff knows or reasonably should know that he has been legally injured by the alleged wrong, however slightly. The fact that the plaintiff's actual damages may not be fully known until much later does not affect the determination of the accrual date. . . .

*Murphy v. Campbell,* 964 S.W.2d 265, 273 (Tex.1997); *see also American Med. Elec., Inc. v. Korn,* 819 S.W.2d 573, 577–78 (Tex. App.—Dallas 1991, writ denied).

Texas's single-action rule has been applied on at least three occasions to asbestos claims. *See Graffagnino v. Fibreboard Corp.,* 776 F.2d 1307, 1308 (5th Cir.1985); *Gideon,* 761 F.2d at 1137; *Pecorino v. Raymark Indus., Inc.,* 763 S.W.2d 561, 569 (Tex.App.—Beaumont 1988, writ denied), *but see Pecorino v. Raymark Indus., Inc.,* 766 S.W.2d 316 (Tex. App.—Beaumont 1989, no writ) (op. on reh'g).

Many jurisdictions, however, have declined to apply the single-action rule in latent disease cases, particularly in asbestos cases. *See, e.g., Wilson,* 684 F.2d at 120–21; *Sheppard v. A.C. & S. Co.,* 498 A.2d 1126, 1134 (Del.Super.Ct.1985), *aff'd,* 503 A.2d 192 (Del. 1986); *Eagle–Picher Indus., Inc. v. Cox,* 481 So.2d 517, 519–20 (Fla.Dist.Ct.App.1985), *aff'd,* 492 So.2d 1331 (Fla.1986); *Wilber v. Owens–Corning Fiberglas Corp.,* 476 N.W.2d 74, 78 (Iowa 1991); *Devlin v. Johns–Manville Corp.,* 202 N.J.Super. 556, 495 A.2d 495, 500 (N.J.Super.Ct.Law.Div.1985); *Marinari,* 612 A.2d at 1028; *Potts,* 796 S.W.2d at 678. These decisions are grounded in several considerations.

First, strict adherence to the single-action rule may result in the routine under compensation of persons who contract more than one asbestos-caused disease. This is because the medical literature indicates that no more than fifteen percent of asbestos victims develop mesothelioma. *See Wilson,* 684 F.2d at 120 n. 45. A plaintiff may recover damages for future consequences of a tort only by establishing that those consequences are reasonably certain, *i.e.,* there is a greater than fifty percent chance that the consequences will result. *See Gideon,* 761 F.2d at 1137–38; *Wilson,* 684 F.2d at 119; *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 681 (Tex.App.—Texarkana 1991, writ denied). Based on the medical literature, asbestosis victims will typically be unable to sustain this burden. *But see Gideon,* 761 F.2d at 1138 (asbestosis victim presented evidence that there was a greater than fifty percent chance he would contract mesothelioma).

Second, courts have considered the policies underlying the single-action rule. Regarding the prevention of stale claims, it has been noted that rather than becoming stale, much of the evidence relating to latent diseases develops over time. *See Wilson*, 684 F.2d at 119. Regarding the conservation of judicial resources, courts have theorized that victims of mild asbestosis might forego litigation and recovery for that illness if they know they will be able to seek a remedy later in the event a more serious disease develops. *See, e.g., id.* at 120. It has been acknowledged, however, that deferring accrual of a mesothelioma claim thwarts the third reason for the single-action rule—repose. *See, e.g., id.* at 119.

In addition to relying on these rationales, the plaintiff points to the equitable justification for the discovery rule. In developing the discovery rule, the supreme court noted that "if the discovery of . . . the injury[ ] is not made until after the period of limitation has run, the result is that [a] legal remedy is unavailable to the injured party before he can know that he is injured." *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex.1972). The court described such a result as "absurd," *id.,* and "shocking," *Gaddis v. Smith*, 417 S.W.2d 577, 581 (Tex.1967). But the court subsequently noted, "The fact that a meritorious claim might thereby be rendered nonassertable is an unfortunate, occasional by-product of the operation of limitations." *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex.1977). That fact does not provide a principled basis upon which to expand the discovery rule. *See Computer Assocs. Int'l, Inc. v. Altai*, 918 S.W.2d 453, 457 (Tex.1996); *Robinson*, 550 S.W.2d at 20.

The plaintiff also argues that the Thirteenth Court of Appeals has retreated from strict application of the single-action rule in a latent disease case. *See Westphal v. Diaz*, 918 S.W.2d 543 (Tex.App.—Corpus Christi 1996), *rev'd on other grounds*, 941 S.W.2d 96 (Tex.1997). Westphal experienced urinary-tract bleeding caused by Cytoxin, which a doctor had prescribed to treat another ailment. Years later, after he learned he had bladder cancer caused by Cytoxin, a suit was brought against the doctor. The doctor moved for summary judgment on limitations grounds, arguing that the bladder cancer was merely the final progression of an injury that began with the urinary tract bleeding. But the Westphals asserted that the bleeding was only a minor, curable side effect of his treatment for the other disease. Because a fact issue existed regarding the relationship between the bleeding and the cancer, the court held that summary judgment was inappropriate. The court stated that if the urinary tract bleeding was a separate and distinct injury, the limitations period for the bladder cancer claim would not have commenced when Westphal learned of the urinary tract bleeding. *See Westphal*, 918 S.W.2d at 547–48.

The plaintiff argues that *Westphal* is analogous to this case because both asbestosis and mesothelioma are caused by asbestos, just as both of Westphal's injuries were caused by Cytoxin, and her summary judgment evidence creates a fact question regarding the relationship between the two diseases. We believe the plaintiff's reading of *Westphal* is overbroad. The court reasoned that if the urinary tract bleeding was only a side effect of treatment, it was not a legally compensable injury for which suit could have been brought before the cancer diagnosis. *See id.* at 548. Asbestosis, however, is undoubtedly a legally compensable injury; indeed, Mr. Pustejovsky filed suit and recovered for that disease.

Finally, the plaintiff argues that the supreme court has recently indicated its approval of the result she seeks. In *Childs*, the court stated:

[W]hen more than one, separate disease process results from a particular exposure, many courts have concluded that allowing the statute of limitations to run separately for each distinct disease benefits plaintiffs, defendants, and the judicial system by "deterring uneconomical anticipatory lawsuits." Although the issue is not before us, we note that our formulation of the discovery rule for latent disease cases does not necessarily preclude a plaintiff from recovering damages for every disease that ultimately manifests itself as a result of the occupational exposure.

*Childs,* 974 S.W.2d 31, 40–42 (footnote omitted). Although the court thus acknowledged that other jurisdictions allow separate accrual dates for separate diseases, it expressly noted that it was not deciding whether Texas would follow those jurisdictions. Moreover, the court did not address the difficulty in reconciling the single-action rule with the allowance of separate accrual dates.[1] In another part of the opinion, the court indicated its adherence to the single-action rule. *See id.* at 40 & n. 7. And, as noted above, the court has previously held that under the discovery rule, a cause of action accrues when the plaintiff knows or reasonably should know that he has been legally injured, however slightly, and the fact that damages may not be fully known until much later does not affect the determination of the accrual date. *See Murphy,* 964 S.W.2d at 273. Given this holding, we do not view the *Childs* dictum as an authorization to adopt the plaintiff's proposed rule. *Cf. In re Smith Barney,* 975 S.W.2d 593 (1998) (when an applicable supreme court decision rests on reasons rejected in another line of cases, lower courts should continue to follow the applicable decision and leave to the supreme court the prerogative of overruling its own decisions).

### CONCLUSION

■ The plaintiff has presented a forceful argument for allowing separate accrual dates for separate asbestos-caused diseases. But considering the interest in repose and the single-action rule's deep roots in Texas jurisprudence, we believe that any exception to the single-action rule, as well as the parameters of that exception, should be created by the Texas Supreme Court.

In *Childs,* the court held that in latent occupational disease cases, accrual of a cause of action occurs when symptoms manifest themselves to such a degree that would put a reasonable person on notice that he or she suffers some injury that is work-related. *See*

974 S.W.2d 31, 40. It is undisputed that Mr. Pustejovsky learned in 1982 that he had suffered an injury resulting from his occupational exposure to asbestos. His cause of action thus accrued twelve years before he filed suit. Because the suit is therefore barred by limitations, we affirm the trial court's granting of summary judgment.

---

1. For example, under the single-action rule, a plaintiff may recover "risk of cancer" damages as part of the single cause of action for asbestos-caused injuries. *See Gideon,* 761 F.2d at 1137–38; *Pool,* 813 S.W.2d at 681. Concomitant with allowing separate accrual dates for separate diseases, some jurisdictions have felt it necessary to

abolish recovery of risk of cancer damages. *See, e.g., Cox,* 481 So.2d at 520 ("[I]f the rule would not bar a second action for the later-manifested injury, the very rationale for permitting future damage awards in the first action ... vanishes.").