Donald **ROBERTS**, Appellant,

v.

Michael **LAIN**, Individually, and Southern Pacific Transportation Company, Appellees.

No. 04–98–01070–CV.

Court of Appeals of Texas, San Antonio.

Aug. 23, 2000.

Bryan P. Cartall, Jeffrey A. Hiller, Curtis L. Cukjati, Cacheaux, Cavazos, Newton, Martin & Cukjati, LLP, San Antonio, for Appellant.

Pamela Fulbright-Scheyer, Cathleen C. Herasimchuk, Rusty Hardin & Associates, Houston, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

The primary issue on appeal in this personal injury case is whether Donald Roberts, a former railroad employee, timely filed suit against his former employer, Southern Pacific Transportation Company, for negligent exposure to chemical solvents. We find that he did not, and therefore affirm the trial court's summary judgment in favor of Southern Pacific.

### Factual & Procedural Background

From 1971 to 1992, Donald Roberts ("Roberts") worked for Southern Pacific Transportation Company ("Southern Pacific") in different capacities and in various Southern Pacific offices located throughout Texas. During his first three years of employment, Roberts worked in San Antonio as a machinist, building and repairing locomotive engine parts. In this position, Roberts used cleaning solvents, primarily two agents he identified as SP 250 and SP 312.[1] Roberts would immerse engine parts, his tools, and his bare hands into buckets containing these solvents. He also used the solvents to remove engine grease from his clothing. Shortly after his initial exposure to and use of these cleaning solvents, Roberts experienced adverse reactions, including rashes on his hands and forearms, irritation, temporary dizziness, metallic taste in his mouth, burning sensation in his eyes, and, at times, short-

ness of breath. Roberts also experienced disturbed sleep patterns. Roberts neither sought medical care nor reported his adverse reactions to Southern Pacific. He continued to work with these solvents until 1974, when he was promoted to a supervisory position. Although he no longer had direct contact with SP 250 and SP 312 as a supervisor, Roberts continued to inhale the fumes of these solvents during routine daily inspections.

In 1985, Roberts transferred from Southern Pacific's San Antonio office to its Eagle Pass office. There, he experienced difficulty with his supervisor, Michael Lain. According to Roberts, Lain waged a campaign of harassment and intimidation against him. In September 1990, Roberts began to suffer from weight loss, severe headaches, bouts of nausea, anxiety, memory loss, and other emotional problems. Roberts sought psychiatric care for treatment of depression and anxiety in 1991. His first treating physician, Dr. Montoyo, attributed his emotional and mental health problems to his stressful work environment and to his poor relationship with Lain. By 1992, according to Roberts, he began to question whether his exposure to SP 250 and SP 312 had caused or at least contributed to his declining health. That same year, Roberts' mental health ultimately deteriorated to the point of a nervous breakdown. In December 1992, he took a medical leave of absence from which he never returned. In the summer of 1993, he was hospitalized for suicidal urges. Dr. Jimenez, Roberts' treating psychiatrist beginning in August 1993, attributed Roberts' mental health problems to job stress and the harassment he allegedly suffered at the hands of Lain. Roberts continued with psychiatric treatment until at least 1998.

In November 1995, Roberts sued Southern Pacific and Lain under the Federal

---

1. Roberts also alleged that may have been exposed to other chemicals, including one solvent he identified as SP 355.

Employers' Liability Act ("FELA") for intentional infliction of emotional distress, alleging that Lain's conduct caused his mental breakdown. *See* 45 U.S.C. § 51 (railroad liable in damages to employee suffering on-the-job injury resulting from negligence of its officers, agents or employees). Roberts claimed that Southern Pacific's failure to intervene on his behalf amounted to a failure to provide a safe work place. In July 1997, Roberts amended his suit against Southern Pacific to include a claim for negligent exposure to toxic materials, alleging that his exposure to SP 250 and SP 312 damaged his nervous system.

In 1998, Southern Pacific filed a no evidence motion for summary judgment, asserting the following grounds with respect to Roberts' negligent exposure claim: (1) Roberts has failed to provide evidence that his claims were timely filed; (2) Roberts has failed to provide evidence that Southern Pacific had any reason to foresee that any chemicals to which he was exposed were or could be harmful; and (3) Roberts has failed to provide evidence of causation. The trial court entered a general summary judgment in favor of Southern Pacific on all of Roberts' claims.

On appeal, Roberts challenges only the portion of the judgment related to his negligent exposure claim.

## Standard of Review

■■■ A no-evidence summary judgment is properly granted if the respondent fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the respondent's claim on which the respondent would have the burden of proof at trial. *Moore v. K Mart Corp.,* 981

**2.** Although Roberts' original petition was filed in 1995, the relation-back doctrine is not applicable to the instant case. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.068 (Vernon 1986). This doctrine allows an amended pleading to relate back to the original pleading and its file date if the causes of action asserted in the amended pleading are based upon same

S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); Tex.R. Civ. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). When, as in the instant case, the judgment is silent regarding the grounds upon which it was granted, we will affirm on any meritorious ground advanced in the motion. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

## Statute of Limitations

■■■ Under FELA, Roberts' claim for negligent exposure to toxic materials is subject to a three-year statute of limitations. 45 U.S.C. § 56. Compliance with FELA's limitations period is a condition precedent to recovery. *Gulf, Colorado & Santa Fe R.R. Co. v. McClelland,* 355 F.2d 196, 197 (5th Cir.1966). The plaintiff therefore bears the burden to allege and prove that his cause of action was commenced within FELA's three-year period. *Carpenter v. Erie R.R. Co.,* 132 F.2d 362, 363 (3d Cir.1942), *cert. denied,* 318 U.S. 788, 63 S.Ct. 983, 87 L.Ed. 1155 (1943); *Emmons v. Southern Pacific Transp. Co.,* 701 F.2d 1112, 1117 (5th Cir.1983). Because Roberts filed his claim for negligent exposure on July 16, 1997, his claim is timely filed only if his cause of action did not accrue before July 15, 1994.[2]

transaction or occurrence that formed the basis of the claims made in the original pleading. *Id.* Roberts filed suit in 1995 against Michael Lain and Southern Pacific for intentional infliction of emotional distress relating to Lain's harassing conduct, which began sometime in the late 1980's. Because Roberts' claim for negligent exposure is based

A cause of action generally accrues when a wrongful act causes some legal injury, even if the injury is not discovered until later, and even if all resulting damages have not yet occurred. *S.V. v. R. V.*, 933 S.W.2d 1, 4 (Tex.1996); *accord Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex.1998). In those rare cases when the nature of the injury incurred is undiscoverable and the evidence of injury is objectively verifiable, the discovery rule applies. The discovery rule provides that a cause of action does not accrue until a plaintiff knows, or through the exercise of reasonable care and diligence, should have known of the wrongful act and resulting injury. *S.V.*, 933 S.W.2d at 4; *accord Childs*, 974 S.W.2d at 36–37.

This judicially-created exception to the general rule of accrual applies in latent occupational disease cases. *Childs*, 974 S.W.2d at 33. In the context of such cases, accrual is deferred until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he suffers from some injury and he knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related. *Id.* at 39–40. We note that "discovery of the injury" does not mean that the plaintiff knows the precise name of the disease that is causing his symptoms or even that his condition has been affirmatively diagnosed by a physician. *Id.* at 41–42. Nor does "discovery" hinge on knowledge of the seriousness of the injury. *Id.*

### Application of Discovery Rule

Roberts argues he met his initial burden under FELA because the injury for which he now sues—the deterioration of his mental health caused by exposure to toxic materials—is properly classified as a latent occupational disease, which thus in-

vokes the discovery rule. As such, Roberts asserts that his cause of action did not accrue prior to 1997 because before that year he did not know or have reason to know that his mental health injuries, which surfaced in the early 1990's, were due to his exposure to SP 250 and SP 312 from the early 1970's. Roberts points out that his doctors initially linked his mental health problems to his stressful work environment, and that it was not until 1997 that his treating physician was able to make the causal connection between his prior chemical exposure and his present mental health condition. Roberts thus concludes he timely filed suit once he had reason to believe his mental health injuries were caused by his work-related chemical exposure.

In response, Southern Pacific contends that the discovery rule is not applicable to the instant dispute because Roberts manifested injuries in the early 1970's from his occupational exposure to SP 250 and SP 310. It argues that Roberts' claim for negligent exposure accrued almost twenty-years before he filed the instant suit, notwithstanding the fact that he did not know the full extent of his injuries flowing from such exposure. *See id.*, at 37–38; *S.V.*, 933 S.W.2d at 4. We agree with Southern Pacific's position, finding that this court's recent decision in *Pustejovsky v. Pittsburgh Corning Corp.*, 980 S.W.2d 828 (Tex.App.-San Antonio 1998, pet. pending), involving the application of the "single-action rule" in the context of a latent occupational disease case, controls the instant dispute.

There, Henry J. Pustejovsky, Jr. had worked from 1954 to 1979 in an aluminum manufacturing plant where he was exposed to asbestos. *Pustejovsky*, 980 S.W.2d at 829. In 1982, Pustejovsky was diagnosed with asbestosis, a scarring of the lung tissue. *Id.* He sued a supplier of asbestos products for his injuries and ultimately

upon activity that occurred in the 1970's, the savings provision of section 16.068 of the Civil Practice & Remedies Code is not triggered in the instant case. *See Long v. State*

*Farm Fire & Cas. Co.*, 828 S.W.2d 125, 128 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

settled the lawsuit. *Id.* In 1994, Pustejovsky was diagnosed with terminal mesothelioma, a cancer of the lining of the lungs, which, like asbestosis, is caused by breathing asbestos fibers. *Id.* Although born out of the same occupational exposure, asbestosis and mesothelioma are separate and distinct diseases. *Id.* Pustejovksy then sued several other suppliers of asbestos products for the injuries resulting from his cancer. *Id.*

The defendants successfully moved for summary judgment on the basis of limitations, arguing that pursuant to the "single-action rule," which provides that there is but one cause of action for all damages arising out of a defendant's wrongful act, Pustejovsky's cause of action for mesothelioma accrued no later than 1982, the year he learned that he was injured by his occupational exposure to asbestos. *Id.* at 830. On appeal, the plaintiff [3] argued against application of the "single-action rule" in the context of latent disease cases, contending that the limitations period for each cause of action commences when the discrete illness becomes discoverable. *Id.* The plaintiff thus asserted that Pustejovsky's mesothelioma claim accrued when he knew, or in the exercise of reasonable diligence should have known, that he had mesothelioma. *Id.* This court rejected that position, holding that current Texas law does not recognize separate accrual dates for separate injuries arising out of a single action. *Id.* at 832–33. Rather, the rule is that accrual for the legal injury occurs when "symptoms manifest themselves to such a degree that would put a reasonable person on notice that he or she suffers *some injury* that is work-related." *Id.* at 833 (emphasis added) (citing *Childs*, 974 S.W.2d at 40). Because Pustejovsky learned in 1982 that he was injured from his exposure to asbestos, his claim for additional injuries arising out of that exposure was untimely. *Id.*

Although the instant case does not involve separate and distinct diseases stemming from the same occupational exposure, application of the "single-action rule" to the instant case nevertheless yields a result similar to the one reached in *Pustejovsky*. As explained by this court in *Pustejovsky*, the "single-action rule" rests upon the notion that only one cause of action exists for each breach of a legal duty. *Id.* at 831. Consequently, *separate types of damages* stemming from one breach will not result in separate causes of action. *Id.* (emphasis added). Here, Southern Pacific's alleged wrong involves exposing Roberts to dangerous toxic chemicals. It is undisputed that from 1971 to 1974 Roberts experienced persistent adverse reactions from to his exposure to SP 250 and SP 312, including but not limited to, skin irritation, dizziness, and shortness of breath. Despite acknowledging such "problems" from his exposure to SP 250 and SP 312, Roberts nevertheless contends that his claim for negligent exposure did not accrue in the 1970's because he is not seeking redress for those injuries. Rather, he argues that because the instant suit seeks damages for his mental injuries that manifested themselves well after his prolonged, daily exposure to and use of SP 250 and SP 312, his knowledge of those early "problems" or symptoms is immaterial to the question of when his claim for his mental injuries arising out of the same occupational exposure accrued. We disagree, finding that Roberts' attempt to separate out "problems" or "injuries" stemming from one legal wrong is impermissible under the "single-action rule." *See id.*

As noted, accrual of a cause of action is not delayed until a plaintiff has full knowledge of the extent of his injuries from the legal wrong. *See S.V.*, 933 S.W.2d at 4. Here, the record demonstrates that Roberts experienced adverse reactions to SP 250 and SP 312 during his daily exposure to and use of them. We

---

**3.** In November 1994, Mr. Pustejovksy died and his wife, Joe Ann Pustejovsky was substituted as a plaintiff, individually and as representative of her husband's estate. *Id.* at 829.

find that such persistent problems were sufficient indication to put Roberts on notice that he was harmed from his exposure to SP 250 and SP 312. Thus, we find that Roberts' claim for negligent exposure accrued in the early 1970's.

Even if we were to assume that accrual did not begin in the early 1970's, we would nevertheless still conclude that Roberts' claim for negligent exposure was time-barred. The record indicates that by 1992 Roberts began to associate his later-manifested symptoms of memory loss, severe headaches, bouts of nausea, and anxiety with his exposure to SP 250 and SP 312. A plaintiff's mere suspicion or subjective belief that a causal connection exists between his exposure and his symptoms is, standing alone, insufficient to establish accrual. *Childs,* 974 S.W.2d at 43. In the instant case, however, Roberts' suspicions about the nature and cause of his later-manifested symptoms cannot be considered in a vacuum. That is, Roberts' suspicions must be considered in light of his earlier-manifested, persistent adverse reactions to the toxic materials. *See id.* (physical impairment could give rise to conflicting inferences regarding plaintiff's knowledge of injury and its likely cause). Thus, viewing the facts as a whole, we find that by 1992, in light of his prior problems with SP 250 and SP 312, Roberts had reason to believe he had been injured by his occupational exposure to SP 250 and SP 312.

Because the record demonstrates that Roberts should have known in the early 1970s, or at the very least by 1992, that he was injured by his exposure to the toxic chemicals provided by Southern Pacific, we find that the trial court properly determined that his claim for negligent exposure to toxic materials filed in 1997 was barred by limitations. According, the summary judgment is affirmed.