# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00606-CV

**Gregg Cooper Waddill, IV, Appellant**

**v.**

**Phi Gamma Delta Fraternity Lambda Tau Chapter**
**Texas Tech University, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. 99-09113-E, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

Appellant Gregg Cooper Waddill, IV, sued appellee Phi Gamma Delta Fraternity Lambda Tau Chapter Texas Tech University ("the Fraternity"), among others,[1] for defamation and hazing. The district court granted summary judgment in favor of the Fraternity. On appeal, Waddill brings a single issue challenging the summary judgment. We will affirm the judgment.

---

[1] Waddill originally brought suit against Phi Gamma Delta International Fraternity (the international fraternity), Phi Gamma Delta Fraternity Lambda Tau Chapter Texas Tech University (the Fraternity), Ryan Frye, Bill Burkhalter, Nathan Lowe, and Charlie Purdue in cause number 99-09113. On March 19, 2002, the district court granted the international fraternity's motion for severance, reassigning the severed claims to cause number 99-09113-B. On the same day that the district court granted the Fraternity's motion for summary judgment, the court granted the Fraternity's motion for severance, reassigning the severed claims to cause number 99-09113-E. The claims against the individuals remained in cause number 99-09113. This appeal stems only from the district court's granting of the Fraternity's motion for summary judgment in cause number 99-09113-E.

## BACKGROUND

In the fall of 1997, Waddill pledged the Fraternity while attending Texas Tech University, in Lubbock. At some point during his pledgeship, a person or persons unrelated to the Fraternity accused Waddill of having engaged in sexual misconduct with an Austin woman. Waddill admits that he was accused of sexual assault by a particular complainant. Although it is undisputed that the allegations were made, Waddill alleges that the allegations were false and made only as part of a scam to extort money from him. According to Waddill's petition, "The District Attorney of Travis County was immediately informed of the scheme against Cooper Waddill, and the District Attorney exonerated him of this defamatory criminal accusation."[2] Waddill advised members of the Fraternity that the allegations had been made but that they were false. Ultimately, the Fraternity revoked Waddill's invitation to become a member. In the fall of 1998, Waddill enrolled at The University of Texas at Austin and attempted to pledge a fraternity, but was unsuccessful.

According to deposition testimony, Justin Davidson, a member of the Delta Tau Delta fraternity at The University of Texas, met Waddill at a rush party in Austin during the fall of 1998. Through conversation, Davidson learned that Waddill had pledged with the Fraternity in Lubbock and that Waddill knew Charlie Perdue, a member of the Fraternity. Davidson and Perdue had attended high school together and were friends. According to Perdue's deposition, Davidson called

---

[2] The Fraternity disputes this fact on the ground that there has been no independent verification of Waddill's exoneration. The record contains no evidence to support Waddill's assertion.

Perdue and asked him whether he remembered Waddill and inquired why Waddill was not "a Fiji up at Tech." Perdue replied that he did not know but that he would make inquiries. Perdue spoke briefly with Nathan Lowe, the Fraternity chapter historian, who told Perdue that he had heard people saying that Waddill did not get along well with women. Lowe advised Perdue: "Tell your friend in Austin not to walk away but run away, [Waddill] is nothing but trouble." Perdue relayed this information to Davidson. Waddill admits that there were rumors about him in Austin and Lubbock in the spring of 1997 before any contact with the Fraternity and that some people in Austin and Lubbock knew of the sexual allegations.

On August 9, 1999, Waddill filed this lawsuit alleging that the Fraternity negligently conveyed defamatory statements about him to third persons and as a result he suffered injury to his reputation. Defamation to a private individual occurs when a defendant negligently communicates or publishes a false statement to a third person capable of understanding the defamatory meaning of the statement, and as a result there is an injury to the person's reputation. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Slander is a defamatory statement published orally. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). In Waddill's third amended petition, filed in January 2002, he added a hazing claim against the Fraternity and its members. *See* Tex. Educ. Code Ann. § 37.152 (West 1996). According to the petition, the Fraternity singled out Waddill for increased hazing because of the allegations against him. The Fraternity allegedly "blackballed" him to force him from the Fraternity.

The Fraternity filed a no-evidence motion seeking summary judgment on the basis that (1) there is no evidence of the Fraternity's duty that supports negligence; (2) there is no evidence

of ratification to establish vicarious liability of the Fraternity; and (3) the claim of hazing is barred by limitations. Waddill responded to the Fraternity's motion by offering deposition testimony regarding the conversations between the Fraternity's members and individuals in Austin. The district court granted the Fraternity's motion. This appeal followed.

## STANDARD OF REVIEW

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that there is no evidence. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal sufficiency standard of review. *Id.*

4

**DISCUSSION**

*Duty of the Fraternity*

A cause of action for negligence consists of three elements: (1) the existence of a legal duty owed to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). To establish liability, a plaintiff must prove the existence and violation of a duty owed to him by the defendant. *El Chico*, 732 S.W.2d at 311. It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp.*, 801 S.W.2d at 525. The district court failed to find any duty owed by the Fraternity to Waddill.

Generally, a person is under no legal duty to control the conduct of another, even if the person has the ability to do so, unless there exists a special relationship between them. *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). We have been cited to no Texas case that has imposed a duty on a fraternal organization to exercise reasonable ordinary care to protect a nonmember third party from allegedly defamatory statements made by the fraternity's members to other third persons. The Fraternity asserts that, because it is an unincorporated association and because there is no evidence that it authorized or ratified a few of its members' decision to reveal the allegedly defamatory allegations, it owes no duty to Waddill as a matter of law and therefore cannot be held vicariously liable. Waddill argues that the Fraternity owed a legal duty to him under the theory articulated by

5

the supreme court in *Texam Oil Corp. v. Poyner*: "An action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty. Neither express authorization nor subsequent ratification is necessary to establish liability." 436 S.W.2d 129, 130 (Tex. 1968); *see also Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 288 (Tex. App.—Corpus Christi 2000, pet. denied); *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 776-77 (Tex. App.—Texarkana 1995, writ denied). Thus, Waddill argues, a duty exists on the part of the Fraternity because the deposition testimony of some of the Fraternity's members establishes that when they communicated the allegedly defamatory statements to members of other fraternities in Austin, they acted in the course and scope of their membership. We disagree.

A corporation—whether for-profit or not-for-profit—is a distinct legal entity which comes into existence by charter from the state. *See, e.g.*, Tex. Bus. Corp. Act Ann. arts. 3.01-.06 (West 2003); Texas Non-Profit Corporation Act, Tex. Rev. Civ. Stat. Ann. art. 1396, §§ 3.01-.05 (West 2003). On appeal, Waddill contends that the "Fraternity clearly operates under a corporate form with a corporate Constitution, Acts and By-Laws that specifically state that the members are subject to the direct control and supervision of the Fraternity." Waddill's summary judgment evidence included exhibits of the Constitution of the Phi Gamma Delta International Fraternity (Exhibit 14), the By-Laws of the Phi Gamma Delta International Fraternity (Exhibit 15), and Portions of the By-Laws that have been produced from the Phi Gamma Delta Lambda Tau Chapter (Exhibit 16); however, there is no evidence in the record of a corporate charter. The Fraternity's summary judgment evidence includes the affidavit of George H. Nelson, an attorney and current

6

graduate advisor to the Fraternity, who averred that the "Lambda Tau Chapter is an unincorporated association operating under a charter granted by the The International Fraternity of Phi Gamma Delta . . ." and that the "Chapter has never been incorporated under the laws of any state." Thus, without summary judgment evidence of filed articles of incorporation or a corporate charter, Waddill's exhibits give rise to no more than a mere suspicion that the Fraternity is a corporation. Waddill cannot, therefore, rely on *Poyner* for its theory of vicarious liability.[3]

"An unincorporated association is a voluntary group of persons, without a charter, formed by a mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 (Tex. 1992). Although Waddill disputes that the Fraternity is in fact an unincorporated association, he offers no evidence that the Fraternity does not meet the above definition of an unincorporated association. We have already concluded that there is no evidence to support Waddill's argument that the Fraternity is a corporation, and the fact that the Fraternity may have a chapter charter from the international fraternity,[4] a constitution, and by-laws does not prevent it from being an unincorporated association. *See, e.g.*, *National Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 85 (Tex. 1999) (describing NCAA—which promulgates rules and regulations, and operates with by-laws—as "voluntary, unincorporated association").

---

[3] Waddill does not argue that Texas courts have extended the rule in *Poyner* to find unincorporated associations liable for the defamatory conduct of its members or agents.

[4] The phrase "without a charter" in the supreme court's definition of an unincorporated association clearly refers to a corporate charter from the state. *See Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 (Tex. 1992).

7

The members of an unincorporated association may be sued, "as to third parties, under the association's assumed name as a legal entity." *Cox*, 836 S.W.2d at 171. However, the First Amendment to the United States Constitution protects the right of association and precludes imposing liability on a national association for the actions of one or more members of a local chapter without a finding that the national association participated in, authorized, or ratified the conduct. *See Juhl v. Airington*, 936 S.W.2d 640, 642 (Tex. 1996) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 931-32 (1982)). Furthermore, an unincorporated association, as a principal, is only responsible for the wrongful conduct of its agent "where there is collusion with the agent, active participation in the wrongful act, or the same is otherwise authorized or ratified." *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. v. Borden*, 328 S.W.2d 739, 744 (Tex. 1959). Thus, where the evidence suggests that only one or two members of the Fraternity recounted the allegedly defamatory allegations, the Fraternity's liability must be analyzed "in terms of the specific actions undertaken, authorized or ratified" by the overall membership of the Fraternity. *See Juhl*, 936 S.W.2d at 643; *Gonzales v. American Postal Workers Union, AFL-CIO*, 948 S.W.2d 794, 798 (Tex. App.—San Antonio 1997, pet. denied).

The district court ruled that Waddill failed to present any evidence by which the Fraternity could be found to have owed a duty to him in its status as an unincorporated association. We agree. Waddill presented no evidence that Perdue obtained information about Waddill for purposes of his membership in the Fraternity; Perdue testified that it was "no big deal" to him and that he spoke to Lowe merely for the sake of answering his friend's question. Although Lowe was chapter historian, there is no evidence that when he spoke to Perdue he was acting in that capacity

8

or was authorized to make the comments about Waddill in fulfillment of his official duties. There is no evidence that any other members of the Fraternity colluded with Lowe when he made the comments, or that other members of the Fraternity actively participated in spreading the allegations to the University of Texas fraternity community. *See Gonzales*, 948 S.W.2d at 798 (trial court correctly granted summary judgment against plaintiff in suit against unincorporated association where summary judgment evidence established that association did not collude with member or actively participate in writing or publishing allegedly defamatory letter). The summary judgment evidence conclusively establishes that the allegations concerning Waddill were conveyed in a phone conversation between friends without the Fraternity's authorization or ratification.

Waddill argues that the Fraternity can nonetheless be vicariously liable for the allegedly defamatory statements of its members on the theory that by "creating and implementing a policy calculated to prohibit the very conduct at issue in this case, the Fraternity clearly assumed a legal duty." For support, Waddill cites *Otis Engineering Corp. v. Clark* for the proposition: "One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care." 668 S.W.2d 307, 309 (Tex. 1983) (citing *Colonial Savings Ass'n v. Taylor*, 544 S.W.2d 116 (Tex. 1976)). Waddill presented his own deposition testimony, in which he stated that the Fraternity has "a rule or something that they live by or a code or something where, when a member is blackballed, they do not go into the extent of that information on why they are blackballed to members and persons outside of the fraternity." Waddill also presented as evidence a letter from the Fraternity's chapter advisor stating that the reasons for terminating a pledge relationship are confidential.

9

Waddill reads *Otis Engineering* too broadly. There, in a wrongful death action, the supreme court extended the assumption of duty rule to apply to a situation where an employer sent an employee home because he was too intoxicated to work. *Otis Eng'g Corp.*, 668 S.W.2d at 308-09. Upon leaving work, the employee had a fatal accident with other motorists. *Id*. The court held that "when, because of an employee's incapacity, an employer exercised control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Id*. at 311. The holding was specific to the employer-employee relationship; nevertheless, to the extent that the duty could be analogized to the Fraternity's exercise of control over its members, the record lacks any evidence that the members pose a recognizable threat of harm to third persons. *See id*.[5]

---

[5] Waddill also cites us to an unpublished memorandum opinion by the Delaware Superior Court for the proposition that a fraternity can be vicariously liable for its members' actions because it has a duty to supervise and control its members. *See Marshall v. University of Del.*, No. 82C-OC-10 (Del. Super. Ct. Oct. 8, 1986) (not designated for publication), 1986 Del. Super. LEXIS 1374.

In that case, a group of fraternity members attended a party at another fraternity house, where they were involved in a fight. *Id*. at *2-3. The plaintiff was injured during the course of the fight. *Id*. The fraternity moved for summary judgment on the grounds that it was an unincorporated fraternal association and owed no duty to the plaintiff. *Id.* The court denied the fraternity's motion, finding that in attending the party, the fraternity members were "within the scope of an agency relationship with" the fraternity because there was evidence "that one of the purposes of a fraternal association is to develop ties of friendship and fellowship among its members." *Id*. at *9-10.

We find the Delaware case to be factually distinguishable. Here, there is no evidence to suggest that in revealing the allegedly defamatory allegations Lowe or Perdue acted within the scope of an agency relationship with the Fraternity. Furthermore, the *Marshall* case is unpersuasive authority insofar as it has no appellate history and does not explicitly address whether the fraternity authorized or ratified the conduct leading to the plaintiff's injuries, which is the test under Texas law.

Furthermore, Waddill failed to present evidence controverting the affidavit of Nelson, in which he avers that "the secret vote provisions of the Constitution and By-Laws . . . are not in place or designed for the protection of individual pledges who may be de-pledged, but rather are for the protection of the autonomous voting rights of individual initiated members of the chapter and . . . to maintain peace in the chapter by prohibiting disclosure of a secret vote or inquiry or question about a brother's vote on the matter." Waddill presented no evidence that the Fraternity assumed a legally cognizable duty by affirmatively choosing to keep secret its members' votes. Although the Fraternity may have the authority to discipline members who violate the policy, we doubt that such a violation is actionable at law by a third person suing the Fraternity unless there is evidence that the Fraternity enacted the policy to protect the interests of such an individual. The district court thus correctly granted summary judgment against Waddill in his action against the Fraternity.

### *Limitations*

In its order granting the Fraternity's summary judgment motion, the district court dismissed Waddill's hazing claim on the ground it was barred by the two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2002). Assuming that Waddill was the victim of hazing by the Fraternity, any cause of action would have accrued no later than the winter of 1997. The statute of limitations thus expired sometime in the winter of 1999. Waddill did not amend his petition to include a hazing claim until January 2002. According to Waddill, his hazing claim is not barred by limitations because it "relates back" to the date of the original pleading for slander. Under the civil practice and remedies code:

11

> If a filed pleading relates to a cause of action . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability . . . is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

*Id.* § 16.068 (West 1997). Waddill contends that the hazing he experienced in the fall of 1997 and the defamation alleged in the fall of 1998 arose from the same transaction: his negative experience with the Fraternity, in which the Fraternity and its members sought to humiliate him because of the sexual allegations made against him.

Waddill cites *Knesek v. Witte*, which held that the phrase "transaction or occurrence" is "not limited to one point in time, but may embrace a course of dealing between the parties." 754 S.W.2d 814, 816 (Tex. App.—Houston [1st Dist.] 1988, writ denied). In that case, however, the plaintiffs' later filing arose out of the same alleged execution of a contractual will that gave rise to their original suit for declaratory judgment. *Id.* The amendments merely added additional facts and a suit to impress a constructive trust as an additional ground for recovery of real property. *Id.* Neither *Knesek* nor any of the other cases cited by Waddill employ the relation-back doctrine for the purpose that he proposes. *See, e.g.*, *Ex Parte Goad*, 690 S.W.2d 894, 896-97 (Tex. 1985) (where original complaint based on failure to pay court ordered division of retirement benefits, amended petition that increased amounts due did not allege wholly new and distinct transaction); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 791 (Tex. App.—El Paso 1996, writ denied) (amended claim did not allege wholly new, distinct, or different transaction because earlier claims of negligent hiring and assault and battery and later claim of false imprisonment arose out of same incident between plaintiff and defendant's employee); *Milestone Properties, Inc. v. Federated Metals Corp.*,

12

867 S.W.2d 113, 117 (Tex. App.—Austin 1993, no writ) (original petition alleging misrepresentation sufficient to apprize defendants of indemnity claim).

Essentially, Waddill seeks to relate his hazing claim, which arose during his pledgeship, forward in time to conduct after his departure that forms the basis of his defamation and negligence claims. The relation-back doctrine cannot be used in such a fashion. *See Roberts v. Lain*, 32 S.W.3d 264, 268 n.2 (Tex. App.—San Antonio 2000, no pet.) (relation-back doctrine not applicable where conduct forming basis of intentional infliction of emotional stress claim began in 1980s and claim for negligent exposure based on activity that occurred in 1970s). The activity that forms the basis of Waddill's defamation and negligence claims did not occur during his pledgeship in 1997, notwithstanding the fact that members of the Fraternity allegedly learned of the sexual-misconduct allegations against Waddill at that time. If the transaction or occurrence forming the basis of his original petition was, as Waddill phrases it, "his involvement with the Fraternity," then hypothetically Waddill could use the relation-back doctrine to amend his petition to add a host of other claims having nothing to do with the injury he complains of in his original petition.

The alleged hazing incidents preceded by nearly a year the events specifically giving rise to the original petition; they occurred while Waddill was a student at Texas Tech University and the Fraternity's pledge. The acts giving rise to the defamation claim occurred in conversations the next year while Waddill was a student at The University of Texas at Austin. Thus, we conclude that the hazing claim is "wholly based on a new, distinct, or different transaction or occurrence." Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Because Waddill would have had no claim for defamation and negligence until the occurrence of the communications between the members of the

13

Fraternity and the individuals in Austin, Waddill must show that his hazing claim is based on this activity to avail himself of section 16.068 of the civil practice and remedies code.  This he cannot do.  We hold that the district court properly granted summary judgment against Waddill's hazing claim based on limitations.

## CONCLUSION

For the reasons above, we overrule Waddill's issue on appeal.  Accordingly, we affirm the district court's summary judgment.

_____

Marilyn Aboussie, Justice

Before Justices B. A. Smith, Puryear and Aboussie[*]

Affirmed

Filed:   July 24, 2003

---

[*]   Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).