ACCEPTED
01-15-00090-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/5/2015 12:59:02 PM
CHRISTOPHER PRINE
CLERK

**No. 01-15-00090-CV**

# In The Court of Appeals
# For The First Court of Appeals District
# Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/5/2015 12:59:02 PM
CHRISTOPHER A. PRINE
Clerk

**VICKY MCKENNA,**
*Appellant*,

**v.**

**BAYLOR COLLEGE OF MEDICINE,**
*Appellee*.

ON APPEAL FROM THE 11TH JUDICIAL DISTRICT COURT,
HARRIS COUNTY, TEXAS
CAUSE NO. 2012-74884

## BRIEF OF APPELLEE

**NORTON ROSE FULBRIGHT US LLP**
Shauna Johnson Clark
*shauna.clark@nortonrosefulbright.com*
State Bar No. 00790977
Joy M. Soloway
*joy.soloway@nortonrosefulbright.com*
State Bar No. 18838700
Heather L. Sherrod
*heather.sherrod@nortonrosefulbright.com*
State Bar No. 24083836
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

**Counsel for Appellee Baylor College of Medicine**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

LIST OF PARTIES AND COUNSEL ................................................................ viii

STATEMENT OF THE CASE .............................................................................ix

STATEMENT REGARDING ORAL ARGUMENT ..............................................ix

ISSUES PRESENTED..........................................................................................x

RECORD REFERENCES ....................................................................................xi

INTRODUCTION .................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................2

    I.     In 2008, McKenna Becomes a Baylor Employee ................................2

    II.    In 2010, Baylor Implements New Patient Care Standards...................2

    III.   McKenna Falls Short of Baylor's Standards and Is Disciplined .........3

    IV.   Events Leading to McKenna's October 2011 Termination for Poor Performance .................................................................................5

    V.    Following the Termination Meeting, Baylor Re-Categorizes McKenna's Termination from Performance to Misconduct ...............7

    VI.   The Garey Email and the Letter to McKenna ......................................8

    VII.  McKenna Informs Certain Prospective Employers of the Circumstances of Her Termination .....................................................8

    VIII. McKenna's EEOC Charge, the Lawsuit and Summary Judgment ..............................................................................................9

SUMMARY OF THE ARGUMENT ...................................................................12

STANDARD OF REVIEW .................................................................................12

ARGUMENT .......................................................................................................13

    I.     The Trial Court Correctly Granted Summary Judgment on McKenna's Discrimination Claims....................................................13

         A.    The *McDonnell* Burden-Shifting Framework Applies Here ..............................................................................................13

Table of Contents
(continued)

B. Baylor Conclusively Established a Legitimate, Non-Discriminatory Reason for Its Discharge Decision .................15

C. McKenna Failed to Raise a Fact Issue on Her Pretext Claim ...........................................................................17

  1. Disagreement with the employer's decision is no evidence of pretext...........................................17

  2. McKenna also failed to raise a fact issue on her claim that she was treated differently ...........................18

II. The Trial Court Correctly Granted Summary Judgment on McKenna's Libel Claim ...........................................23

A. Summary Judgment Should Be Affirmed Because McKenna Did Not Dispute the Truthfulness of the Statements and She Failed to Raise a Fact Issue on Her Self-Publication Theory ...........................................24

  1. McKenna did not contest the truthfulness of the statements .................................................................24

  2. McKenna failed to raise a fact issue on her self-publication theory (assuming *arguendo* the claim is cognizable) ...........................................25

B. McKenna's Libel Claim Was Time-Barred ...........................26

C. As a Matter of Law, Baylor Proved the Statements Were Protected by a Qualified Privilege ...........................30

  1. The statements here are protected by the privilege .......31

  2. McKenna waived her claim that the statements were made with malice .................................................33

III. The Trial Court Correctly Granted Summary Judgment on McKenna's Breach of Contract Claim ...........................34

CONCLUSION AND PRAYER FOR RELIEF ...........................36

CERTIFICATE OF WORD COMPLIANCE ...........................37

CERTIFICATE OF SERVICE ...........................37

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Houston Cmty. Coll. Sys.*,
458 S.W.3d 633 (Tex. App.—Houston [1st Dist.] 2015, no pet.)...............*passim*

*Arredondo v. Rodriguez*, 198 S.W.3d 236 (Tex. App.—San Antonio
2006, no pet.) ......................................................................................36

*Austin v. Inet Techs., Inc.*,
118 S.W.3d 491 (Tex. App.—Dallas 2003, no pet.) ..............................23, 26, 31

*Baker Hughes Oilfield Operations, Inc. v. Williams*,
360 S.W.3d 15 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).........*passim*

*Bryant v. Compass Grp. USA, Inc.*,
413 F.3d 471 (5th Cir. 2005) .................................................................17

*Burbage v. Burbage*,
447 S.W.3d 249 (Tex. 2014) ......................................................................30, 33

*Carlton v. Houston Cmty. Coll.*,
No. 01-11-00249-CV, 2012 WL 3628890 (Tex. App.—Houston
[1st Dist.] Aug. 23, 2012, no pet.) (mem. op.) .....................................21

*Chandler v. CSC Applied Techs., LLC*,
376 S.W.3d 802 (Tex. App.—Houston [1st Dist.] 2012, pet.
denied)........................................................................................................*passim*

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ........................................................................13

*Domingo v. Mitchell*,
257 S.W.3d 34 (Tex. App.—Amarillo 2008, pet. denied) ................................35

*Easley v. Members Ins. Grp.*,
828 S.W.2d 39 (Tex. App.—Houston [14th Dist.] 1991, no writ)...............24, 25

*Fago v. City of Hartford*,
   No. 3:02-cv-1189-AHN, 2006 U.S. Dist. LEXIS 14911 (D. Conn.
   Mar. 31, 2006)....................................................................................................22

*Flournoy v. Campbell Concrete & Materials, LLC*,
   No. H-09-3894, 2011 WL 722614 (S.D. Tex. Feb. 22, 2011) ...........................18

*FM Props. Operating Co. v. City of Austin*,
   22 S.W.3d 868 (Tex. 2000)..........................................................................13, 23

*Frakes v. Crete Carrier Corp.*,
   579 F.3d 426 (5th Cir. 2009) .......................................................................31, 33

*Gallien v. Goose Creek Consol. Indep. Sch. Dist.*,
   No. 14-11-00938-CV, 2013 Tex. App. LEXIS 2790
   (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. denied)
   (mem. op.)....................................................................................................35, 36

*Green v. Lowe's Home Ctrs., Inc.*,
   199 S.W.3d 514 (Tex. App.—Houston [1st Dist.] 2006, pet.
   denied)................................................................................................................17

*Heck v. Am. Multi-Cinema, Inc.*,
   No. 07-4915(MLC), 2009 WL 540685 (D.N.J. Mar. 4, 2009)...........................23

*Henriquez v. Cemex Mgmt., Inc.*,
   177 S.W.3d 241 (Tex. App.—Houston [1st Dist.] 2005, pet.
   denied)................................................................................................................31

*Holloway v. Butler*,
   662 S.W.2d 688 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd
   n.r.e.) .................................................................................................................27

*Iacono v. Lyons*,
   16 S.W.3d 92 (Tex. App.—Houston [1st Dist.] 2000, no pet.).........................35

*Kirkpatrick v. Pfizer, Inc.*,
   391 F. App'x 712 (10th Cir. 2010) ....................................................................23

*Lee v. Kansas City & S. Ry. Co.*,
   574 F.3d 253 (5th Cir. 2009) .......................................................18, 19, 20, 22

*Lyle v. Waddle,*
144 Tex. 90, 188 S.W.2d 770 (1945) ...................................................26

*Mack Trucks, Inc. v. Tamez,*
206 S.W.3d 572 (Tex. 2006) ...............................................................13

*Majdzadeh-Koohbanani v. Jaster-Quintanilla Dallas, LLP,*
No. 3:09-CV-1951-G-BK, 2010 WL 5677911 (N.D. Tex. Dec. 20,
2010) ...................................................................................................32

*Martinez v. Hardy,*
864 S.W.2d 767 (Tex. App.—Houston [14th Dist.] 1993, no writ)...................27

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973)............................................................................13

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
372 S.W.3d 629 (Tex. 2012) ...............................................................14

*Navy v. Coll. of the Mainland,*
407 S.W.3d 893 (Tex. 2013) .................................................18, 20, 22

*Nixon v. Mr. Prop. Mgmt. Co.,*
690 S.W.2d 546 (Tex. 1985) ...............................................................12

*Patrick v. McGowan,*
104 S.W.3d 219 (Tex. App.—Texarkana 2003, no pet.)...................31

*Preuss v. Kolmar Labs., Inc.,*
970 F. Supp. 2d 171 (S.D.N.Y. 2013) .......................................21, 22

*Randall's Food Markets, Inc. v. Davis,*
891 S.W.2d 640 (Tex. 1995) .......................................24, 31, 33, 34

*Raytheon Co. v. Hernandez,*
540 U.S. 44 (2003)..............................................................................16

*Rincones v. WHM Custom Servs.,*
457 S.W.3d 221 (Tex. App.—Corpus Christi 2015, pet. filed).............25, 26, 32

*Roark v. Stallworth Oil & Gas, Inc.,*
813 S.W.2d 492 (Tex. 1991) ...............................................................35

*Safeshred, Inc. v. Martinez*,
    365 S.W.3d 655 (Tex. 2012) ...................................................................16

*Schirle v. Sokudo USA, L.L.C.*,
    484 F. App'x 893 (5th Cir. 2012) ...........................................................29

*Stephan v. Baylor Med. Ctr. at Garland*,
    20 S.W.3d 880 (Tex. App.—Dallas 2000, no pet.) .............................27

*Stokes v. Va. Dep't of Corr.*,
    No. 3:10cv370, 2012 WL 4461493 (E.D. Va. Aug. 17, 2012)
    *aff'd*, 512 F. App'x 281 (4th Cir. 2013) ...............................................16

*Taylor v. Bailey Tool & Mfg. Co.*,
    744 F.3d 944 (5th Cir. 2014) ...................................................................28

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*,
    219 S.W.3d 563 (Tex. App.—Austin 2007, pet. denied) .....................29

*Tex. Gas Utils. Co. v. Barrett*,
    460 S.W.2d 409 (Tex. 1970) ...................................................................35

*Turner v. Kan. City S. Ry. Co.*,
    675 F.3d 887 (5th Cir. 2012) ...................................................................18

*Valence Operating Co. v. Dorsett*,
    164 S.W.3d 656 (Tex. 2005) ...................................................................13

*Villegas v. Harris Cnty.*,
    No. 01-07-00031-CV, 2007 WL 4465369 (Tex. App.—Houston
    [1st Dist.] Dec. 20, 2007, no pet.) (mem. op.) .......................................14

*Waddill v. Phi Gamma Delta Fraternity Lambda Tau Ch. Tex. Tech
    Univ.*,
    114 S.W.3d 136 (Tex. App.—Austin 2003, no pet.) ...........................29

*Wallace v. Methodist Hosp. Sys.*,
    271 F.3d 212 (5th Cir. 2001) ...................................................................17

*Welch v. Doss Aviation, Inc.*,
    978 S.W.2d 215 (Tex. App.—Amarillo 1998, no pet.) ........................31

*Ysleta Indep. Sch. Dist. v. Monarrez,*
    177 S.W.3d 915 (Tex. 2005) (per curiam) ........................................19

## Rules, Statutes & Codes

29 C.F.R. § 1910.141(g)(2)...........................................................................6

29 C.F.R. § 1910.1030(d)(2)(ix).................................................................6

Tex. Civ. Prac. & Rem. Code § 16.002(a)..........................................26, 27

Tex. Civ. Prac. & Rem. Code § 16.068 ....................................................28

Tex. Civ. Prac. & Rem. Code Ann. § 73.001 ..........................................23

Tex. Civ. Prac. & Rem. Code § 73.005 ....................................................24

Tex. Lab. Code § 21.001(1) .......................................................................14

Tex. R. App. P. 38.2(a)(1)(B) .....................................................................2

Tex. R. Civ. P. 166a(c) ........................................................................24, 36

Tex. R. Civ. P. 166a(i) ...............................................................................33

## Other Authorities

Restatement (Second) of Contracts § 17 (1981)......................................35

Samuel Willston, A Treatise on the Law of Contracts § 23 (Walter
    H.E. Jaeger ed., 3d ed. 1957)................................................................35

## LIST OF PARTIES AND COUNSEL

**Appellant:**

Vicky McKenna

**Appellant's Trial & Appellate Counsel:**

Glenn W. Patterson, Jr.
*glenn@patterson-adr.com*
Attorney at Law
11 Greenway Plaza, Suite 2820
Houston, Texas 77046
Telephone:  (713) 961-1200
Telecopier:  (713) 961-0941

**Appellee:**

Baylor College of Medicine

**Appellee's Trial Counsel:**

Shauna Johnson Clark
*shauna.clark@nortonrosefulbright.com*
Heather L. Sherrod
*heather.sherrod@nortonrosefulbright.com*
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

**Appellee's Appellate Counsel:**

Shauna Johnson Clark
*shauna.clark@nortonrosefulbright.com*
Joy M. Soloway
*joy.soloway@nortonrosefulbright.com*
Heather L. Sherrod
*heather.sherrod@nortonrosefulbright.com*
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

# STATEMENT OF THE CASE

*Nature of the Case:*

Plaintiff Vicky McKenna brought this race (she is white) and age (she is 48) discrimination case following her October 31, 2011 termination from Baylor College of Medicine ("Baylor"). CR4. In addition to discrimination, McKenna asserted claims for libel and two breach of contract claims. CR58. Her breach of contract claims were for back pay (pay for an allegedly unpaid shift) and breach of an alleged promise to keep her on the payroll for 30 days following her termination. CR68.

*Trial Court:*

11th Judicial District Court, Harris County, Texas Honorable Michael Miller presiding.

*Course of Proceedings:*

Following adequate time for discovery, Baylor filed a traditional and no-evidence motion for summary judgment on all of McKenna's claims. CR71.

*Disposition:*

The trial court granted Baylor's motion except as to McKenna's claim for back pay. CR488. The parties then entered into a Rule 11 agreement providing that McKenna would dismiss her back pay claim without prejudice allowing the summary judgment to become final. CR489; 2SCR3, 5.

**STATEMENT REGARDING ORAL ARGUMENT**

Baylor is asking for argument only because McKenna did and if this Court grants argument, Baylor would like to participate. But Baylor does not believe argument is warranted in this case as the parties' arguments are adequately set forth in their briefs, the record is manageable and the law is settled.

# ISSUES PRESENTED

1.     Whether the trial court correctly granted summary judgment to Baylor.

2.     Whether the trial court correctly granted summary judgment to Baylor on McKenna's discrimination claims because she failed to raise an issue of material fact.

3.     Whether the trial court properly granted summary judgment to Baylor on McKenna's libel claim because she did not refute Baylor's evidence that the statements at issue were true, or because as a matter of law (1) McKenna's claims are time barred and (2) the statements at issue are protected by a qualified privilege.

4.     Whether the trial court properly granted summary judgment to Baylor on McKenna's claim for breach of contract on the basis of no consideration.

## RECORD REFERENCES

The original clerk's record is cited as "CR." The first supplemental clerk's record filed on June 25, 2015 is cited as "SCR" and the second supplemental clerk's record filed on August 28, 2015, is cited as "2SCR." McKenna's Appellant's Brief will be cited as "AB."

**INTRODUCTION**

The facts of this case, as established by the summary judgment evidence, are straightforward. McKenna was employed by Baylor between 2008 and 2011; her employment ended because of poor performance. In the year leading up to her termination, McKenna failed to timely complete her chart reviews, failed to treat the required number of patients per hour, was late for work, and exhibited a negative attitude. The events of October 7, 2011 were the tipping point. On that day, McKenna failed to properly transfer a patient under her care to another provider at the end of her shift, carried a water bottle in the patient care area in violation of Baylor policy and federal regulations, and loudly used unprofessional language in front of patients. Baylor decided to terminate McKenna for these events after reviewing her prior disciplinary history.

Because of McKenna's disrespectful and aggressive conduct during and after her termination meeting (including pointing her finger in her supervisor's face), Baylor's Human Resources Department decided to re-categorize McKenna's termination from performance-based, which carried with it eligibility to be rehired within Baylor, to "misconduct—ineligible for rehire."

McKenna's claims for discrimination, libel and breach of contract had no factual basis. This case was properly disposed of by summary judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

McKenna's statement of facts is incomplete, is missing required record cites, and is misleading. Baylor therefore provides its own. Tex. R. App. P. 38.2(a)(1)(B).

### I.    In 2008, McKenna Becomes a Baylor Employee

Between 2006 and 2008, McKenna worked as a nurse practitioner (also referred to as a midlevel provider) at the Ben Taub Emergency Center for the Harris County Hospital District. CR117-19, 120. McKenna became a Baylor employee in October 2008 when Baylor took over the Ben Taub Emergency Center. CR118. McKenna was then 45 years old. CR136. McKenna continued in her same position in the Emergency Center. CR118.

### II.    In 2010, Baylor Implements New Patient Care Standards

Beginning in July 2010, Baylor instituted emergency medicine standards to ensure physicians and midlevel providers were providing efficient, quality patient care. CR157. First, Baylor tracked the number of patients each midlevel provider treated and instituted a goal for every midlevel provider to treat an average of two patients per hour. CR156, 166. Midlevel providers who consistently failed to treat an average of two patients an hour were counseled. CR176-77.

Second, Baylor implemented chart reviews as a means of achieving quality assurance and measuring performance. CR122-23. On a monthly basis, midlevel providers were required to select ten patient charts to review with their supervising

physician. CR122-23. The midlevel provider and supervising physician were to then discuss each chart, review the patient's symptoms, diagnostic management, and the diagnostic tests that should be utilized to determine the patient's diagnosis and care. CR123, 155. To track compliance with this requirement, the midlevel provider's supervising physician completed a chart review form, which the midlevel provider submitted to the Ben Taub Emergency Department Administrator with copies of the reviewed charts. CR122, 154.

## III. McKenna Falls Short of Baylor's Standards and Is Disciplined

McKenna was subject to these initiatives. However, McKenna fell short of Baylor's new performance standards. For example, McKenna failed to timely complete her chart reviews and treated less than two patients per hour on average. These issues were brought to her attention, and she did not react appropriately.

First, in December 2010, McKenna, along with other midlevel providers, received an email from her immediate supervisor, Trisha Harris, stating that her chart reviews were more than 30 days delinquent. CR123.[1]

On April 12, 2011, McKenna, along with other midlevel providers, received another email notifying her that her chart reviews were more than 30 days late. CR124, 171-72.

---

[1] McKenna's presentation of the facts suggests that she was delinquent in completing her chart reviews for only a few weeks in the summer of 2011. AB 4. She leaves out that she was first counseled for delinquent chart reviews in December of 2010, and that she remained so. *Id.*

McKenna ignored these reminders. CR172. Instead, in response to Harris'
April email, McKenna suggested to her new supervising physician that her failure
to timely complete her chart reviews be "disregard[ed]." CR124-25. Her
suggestion was straight-out rejected. CR125. McKenna was also reminded that
she was six months delinquent in submitting chart reviews, and that it was her
responsibility to find a time to meet with her supervising physician to prevent such
delinquencies. *Id*. Even though she understood that the chart reviews provided an
educational opportunity, McKenna remained delinquent. *Id.*

On June 13, 2011, McKenna received a written warning for delinquent chart
reviews. CR126.[2] Along with the written warning, McKenna was asked to work
an extra shift to make up the administrative time she missed by failing to complete
the reviews and as a deterrent to discourage future delinquencies. CR173, 188.[3]

On June 21, Harris and Dr. Angela Fisher, the Associate Chief of Operations
for Baylor's Emergency Medicine Section, met with McKenna to discuss her
performance. CR127. McKenna was told that her productivity was substandard.

---

[2] Besides McKenna, the counseled employees included Trent Renfrow (age 45, Caucasian),
Charles Dangerfield (age 40, African-American), and Alicia Nash (age 39, African-American).
CR177, 194. McKenna's claim that Dr. Fisher wanted to fire her (AB 3, 17) is misleading. The
testimony is that Dr. Fisher wanted to make sure that McKenna's low productivity was properly
documented, which action is not probative of a discrimination claim. CR451-52.

[3] Midlevel providers are expected to work a set number of hours annually. CR171. Time spent
working clinical shifts treating patients, vacation time, holiday time, and time spent performing
administrative and academic duties are counted toward the annual, hourly expectation. CR188.
McKenna was a salaried employee. CR123. Her pay was never docked, and she received the
same amount of pay regardless of the number of hours she worked. CR123, 174.

CR127-28. McKenna was also told that other nursing staff had concerns about her performance. CR128. After the meeting, McKenna received a written warning, which summarized her supervisors' concerns, including that she was inefficient regarding patient care and throughput, exhibited a negative attitude at work, failed to comply with non-clinical faculty requirements, and had persistent poor productivity. *See* CR127-29, 175-76, 196.[4] McKenna was placed on probation pending improvement of her performance. CR128, 182, 196. And she was told that failure to improve could result in further disciplinary action. CR196.

On June 27, 2011, McKenna was more than two hours late for work and was given a written warning. CR127, 174.

## IV. Events Leading to McKenna's October 2011 Termination for Poor Performance

The tipping point happened on October 7, 2011. At the end of her shift, McKenna presented Dr. Fisher with disorganized sign-out reports for <u>four</u> patients in her care. CR130-31, 149. When a patient is transferred to another department or a midlevel provider completes his or her shift, it is standard practice for the midlevel provider to "sign-out" or transfer his or her patients to another provider. CR149. To ensure that care is seamlessly transferred from one provider to another,

---

[4] McKenna claims that she was the only person actually written up (as opposed to spoken to) for "not seeing two or more patients per hour." AB 4. That is factually incorrect. As noted in n.2 *supra*, McKenna's former supervisor, Trisha Harris, testified that McKenna, Alicia Nash, Trent Renfrow, and possibly Charles Dangerfield were written up for failing to meet the Emergency Medicine Section's productivity expectations. SCR103.

the departing provider verbally explains each patient's chart, including any tests run and other pertinent information. CR149-50.

After McKenna completed her sign-out, Dr. Fisher learned that McKenna had failed to sign-out a <u>fifth</u> patient. CR149, 152, 198-99. Left in the critical care area by herself, the patient became angry and uncooperative. CR198-99. When Dr. Fisher approached McKenna in the patient care area to discuss the patient, McKenna became upset and loudly used profane language in front of patients. CR132, 198-99. McKenna at this time was also carrying a water bottle in the patient care area, breaking another rule; i.e., it is a violation of hospital policy ***and the law***, for hospital employees to have food or drinks in patient care areas. CR132, 150, 199. (This may sound like a minor violation of an unimportant policy, but it is not. The prohibition on food and beverages in patient care areas is required by OSHA. *See* 29 C.F.R. §§ 1910.1030(d)(2)(ix), 1910.141(g)(2).)[5]

After reviewing this last incident and McKenna's prior disciplinary history, Baylor decided to terminate McKenna. CR152, 201. There was no single reason for the decision. It was instead the culmination of the performance-related events recounted above. CR202.

---

[5] McKenna's assertion that she did not violate policy by drinking liquids in patient areas (AB 6) is refuted by her record cite to Dr. Fisher's testimony. CR327 (testifying that OSHA regulations mandate that "food and drink are not allowed in patient care areas").

6

**V.     Following the Termination Meeting, Baylor Re-Categorizes McKenna's Termination from Performance to Misconduct**

On the morning of October 31, 2011, McKenna's supervisors (Dr. Fisher and Harris) and members of Baylor's Employee Relations Department (Judy Garey and Letha Smith) met with McKenna to inform her that she would be terminated effective December 1, 2011 because of her persistent poor performance.  CR130, 181.  Baylor offered McKenna 30 days of paid administrative leave as a courtesy to assist her in transitioning to a new position at Baylor (other than Baylor's Emergency Medicine Section) or elsewhere.  CR152, 212, 214.

McKenna became upset; things quickly escalated to the point where she became disrespectful.  CR143, 153, 183, 202, 421.  She stormed out of the meeting, slammed her office door, at some point resorted to pointing her finger in Dr. Fisher's face, and had to be escorted from the premises by security.  CR152, 183, 202, 223-24, 421.  The security officer was in "disbelief" at McKenna's behavior.  CR183, 421.

After the termination meeting, Garey met with Dane Friend, Baylor's Vice President of Human Resources, and told him what had happened.  CR212.  Based on the conduct witnessed by Garey and Smith, Baylor's Employee Relations Department concluded that McKenna's behavior at the meeting constituted misconduct, decided to terminate McKenna effective immediately, and to re-categorize her termination from "performance" to "misconduct."  CR181, 184,

212-13. As a result of the re-categorization, McKenna was not eligible to receive 30 days of paid administrative leave and was no longer eligible for rehire at Baylor. CR182, 184.

## VI. The Garey Email and the Letter to McKenna

On October 31, McKenna's midlevel colleagues and supervisors were informed by email that (1) McKenna would no longer work in the Emergency Medicine Section, (2) everyone should "respect Ms. McKenna's privacy and allow her departure to remain confidential," and (3) Human Resources agreed that McKenna could be discharged for misconduct, making her ineligible for rehire. CR231-32 (hereafter the "Garey Email").

By letter dated November 2, Baylor notified McKenna of her change in status—i.e., that she was terminated for misconduct and would not receive post-termination pay. CR234. (The letter mistakenly noted her date of discharge as October 24 rather than October 31. *Id.*)

In mid-November, Maria Rodriquez, McKenna's former colleague who had received the Garey Email, forwarded it to her. CR221-22.

## VII. McKenna Informs Certain Prospective Employers of the Circumstances of Her Termination

Baylor's practice is to answer inquiries about former employees by providing only dates of employment and last position held. CR202. However, McKenna herself informed certain prospective employers that she was terminated

by Baylor for misconduct, which she claims frustrated her job search for a few months, until she was able to secure employment with an agency. CR131, 486; AB 7, 12, 31.

## VIII. McKenna's EEOC Charge, the Lawsuit and Summary Judgment

***EEOC proceeding.*** On March 22, 2012, McKenna filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and for the first time complained she was the victim of discrimination by Baylor. CR236; *see also* CR120, 137 (McKenna's acknowledgment that she never complained about discrimination while working at Baylor). Baylor's responsive filing stated that McKenna was terminated for persistent poor performance, not because of race or age. CR215.[6]

After the EEOC dismissed McKenna's charge, McKenna filed this lawsuit alleging race and age discrimination. CR4. Her amended pleading also asserted claims for libel and breach of contract. CR71.

***Race and age discrimination claims***. McKenna's discrimination claims were based on the discipline she received and her discharge. CR61-62. McKenna

---

[6] McKenna points out that Baylor was unable to explain why it informed the EEOC that she was terminated for performance-related issues rather than misconduct (*e.g*., AB 10, 13), but the accuracy of the information Baylor provided to the EEOC in that regard is not probative of any element of any claim.

has since limited her discrimination claim to her termination. CR269, 276; AB 14-24.[7]

While acknowledging that no one ever made any negative comments about her race, McKenna nonetheless claims her termination was discriminatory because she was "singled out" by Harris and Dr. Fisher. CR136. With respect to her age claims, McKenna claims that Dr. Fisher called her "old school" or "from . . . the old Ben Taub." *Id.*; *see also* AB 3. McKenna also points out that she was the "oldest white female of medical providers" and Kaye-Ann Christie, a "25-year-old black female," was hired after she was terminated. CR63, 136, 137, 140; *see also* AB 3, 21. (Christie was a top performer in Baylor's fellowship program and did not replace McKenna. CR185-86, 239-40.)

*Libel*. McKenna's libel claim (CR65-68) was based on (1) the Garey Email (CR231); (2) the November 2, 2011 letter (CR234); and (3) statements Baylor sent to the Texas Workforce Commission ("TWC") in response to McKenna's unemployment claim (CR247-48).[8] McKenna's libel claim was first asserted in her First Amended Petition filed May 19, 2014, well over a year from the date of the alleged defamatory statements. CR19, 26.

---

[7] This makes sense as TCHRA reaches only "ultimate employment decisions." *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

[8] In that response, Baylor stated that McKenna had become "verbally combative" during her termination meeting and was terminated for misconduct.

***Breach of contract claims***.  McKenna alleged two breach of contract claims. First, McKenna alleged that Baylor was contractually bound to pay her the 30 days' salary promised to her during the October 31, 2011 termination meeting. CR68.  Second, even though she was a salaried employee (CR123), McKenna alleged Baylor owed her an additional 12 hours of pay because she was assigned an extra shift in July 2011 in order to correct delinquent chart reviews.  CR68, 173.

Baylor moved for summary judgment on traditional and no-evidence grounds.  CR71.  Baylor demonstrated that it was entitled to summary judgment as a matter of law for the following reasons:

| Claim | Basis for Summary Judgment |
|---|---|
| Discrimination | McKenna's discrimination claim failed as a matter of law because (a) McKenna was terminated for a lawful reason and (b) McKenna could not establish that Baylor's reasons for its termination decision were pretextual.  CR85-94. |
| Libel | McKenna's libel claim failed as a matter of law because the statements at issue were true, the claim was barred by limitations, the relation back doctrine was inapplicable, and every statement was subject to a qualified privilege.  CR94-104. |
| Breach of Contract | McKenna's claim that Baylor breached its promise to pay her an additional 30-days' salary and benefits failed for lack of consideration and her claim for back pay (for a 12-hour shift) failed because she was a salaried employee. CR104-06. |

In her response, McKenna did not dispute Baylor's claim that the statements made by Baylor were true (CR283-87), as Baylor so noted (1SCR70).

The trial court granted Baylor's motion for summary judgment on all claims asserted by McKenna except her claim for back pay. CR488. McKenna subsequently nonsuited her back pay claim without prejudice (CR489; 2SCR6) and then filed her notice of appeal. CR511.

## SUMMARY OF THE ARGUMENT

McKenna's appeal has no merit. She broke several rules, was a repeat offender, and was discharged. The trial court properly granted summary judgment on her baseless claims for discrimination, libel and breach of contract. The judgment below should be affirmed.

## STANDARD OF REVIEW

The standard of review for a traditional summary judgment is well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *See, e.g., Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

58615585                                    12

Because a no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict (*Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006)), the Court applies the same legal-sufficiency standard of review that applies when reviewing a directed verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (setting forth circumstances for when a no-evidence challenge should be sustained).

In either case, traditional or no evidence, review is *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court grants the judgment without specifying the grounds, the judgment will be affirmed if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## ARGUMENT

### I. The Trial Court Correctly Granted Summary Judgment on McKenna's Discrimination Claims

#### A. The *McDonnell* Burden-Shifting Framework Applies Here

McKenna claimed she was the victim of age and race discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"). CR62-64.

McKenna relied on circumstantial evidence to support her allegations. *Id.* When, as here, a plaintiff seeks to prove discrimination through circumstantial evidence, this Court applies the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012);

*Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 643 (Tex. App.—Houston

[1st Dist.] 2015, no pet.).[9]

The discrimination plaintiff must first establish a *prima facie* case of

discrimination. *Anderson*, 458 S.W.3d at 643. If a plaintiff successfully

demonstrates a *prima facie* case, the burden of production shifts to the defendant-

employer to show a legitimate and non-discriminatory basis for the adverse

employment decision. *Id.* at 643-44. Notably, an employer's burden of producing

a legitimate, non-discriminatory reason is not a difficult one. *Chandler v. CSC*

*Applied Techs., LLC*, 376 S.W.3d 802, 818 (Tex. App.—Houston [1st Dist.] 2012,

pet. denied); ("'Management does not have to make proper decisions, only non-

discriminatory ones.'") (citation omitted); *Villegas v. Harris Cnty.*, No. 01-07-

00031-CV, 2007 WL 4465369, at *3 (Tex. App.—Houston [1st Dist.] Dec. 20,

2007, no pet.) (mem. op.) ("This burden of production is not difficult to meet: even

an incorrect belief that an employee's performance is inadequate constitutes a

legitimate, nondiscriminatory reason for an adverse employment action.").

If the employer articulates a non-discriminatory reason for its employment

action, then the burden shifts back to the employee to prove that the articulated

---

[9] Because it is modeled after Title VII of the Civil Rights Act of 1964, as amended, Texas courts look to analogous federal law to guide their analysis of discrimination claims brought pursuant to the TCHRA. Tex. Lab. Code § 21.001(1); *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 633; *Anderson*, 458 S.W.3d at 643.

14

reason is a mere pretext for unlawful discrimination. *Anderson*, 458 S.W.3d at 643-44; *see also Chandler*, 376 S.W.3d at 814-15.

Although the burden of production shifts between the parties, the burden of persuasion "'remains continuously with the plaintiff.'" *Anderson*, 458 S.W.3d at 644 (citation omitted).

Baylor assumed for purposes of its motion below that McKenna was able to make a *prima facie* case for her race and age discrimination claims (CR85, at n.10) and will do so again here.[10] Baylor then went on to establish as a matter of law that it had legitimate, non-discriminatory reasons for its discharge decision and McKenna failed to show those reasons were pretextual.

## B. Baylor Conclusively Established a Legitimate, Non-Discriminatory Reason for Its Discharge Decision

Baylor's summary judgment evidence conclusively established that McKenna was terminated because of her performance deficiencies—over a lengthy period of time, McKenna was simply not performing up to Baylor's standards. For example, McKenna failed to submit her chart reviews for months on end (after numerous reminders), failed to meet the requirement for average number of patients to be treated per hour, was late to work, violated hospital policy by failing

---

[10] For example, Baylor assumed that McKenna, although white, was a member of a protected class for purposes of her race discrimination claim. *Anderson*, 458 S.W.3d at 643 (to establish a *prima facie* case of discrimination, the employee must show she is a member of a protected class).

to transfer a patient at the end of the shift (thus creating a dangerous situation for that patient), used profane language, and violated hospital policy and federal law by bringing a water bottle into a patient care area. *E.g.*, CR124-27, 132, 150, 172, 174, 199.

Separate and apart from her prolonged failure to meet Baylor's performance standards, McKenna's behavior at her termination meeting also supplied a legitimate non-discriminatory reason for termination. CR181, 184, 212-13. McKenna left that meeting, then proceeded to slam the door to her office, and had to be escorted out by security. CR152, 183, 202, 223-24. Her misconduct is a legitimate, non-discriminatory reason for Baylor's decision to reclassify her termination from performance to misconduct.[11] *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54-55 (2003) (holding that a "no-rehire policy is a quintessential legitimate, non-discriminatory reason for refusing to rehire an employee who was terminated for violating workplace conduct rules"); *Stokes v. Va. Dep't of Corr.*, No. 3:10cv370, 2012 WL 4461493, at *8 (E.D. Va. Aug. 17, 2012) *aff'd*, 512 F. App'x 281 (4th Cir. 2013) (finding evidence of inappropriate behavior a legitimate, non-discriminatory reason for refusing to rehire the plaintiff).

---

[11] The Texas Supreme Court has noted that the decision to categorize an employee as ineligible for rehire is not qualitatively different than the termination itself. *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 665 (Tex. 2012). Accordingly, a separate claim for re-categorizing her termination fails.

Because Baylor established that it had a legitimate reason (actually multiple reasons) to terminate McKenna, the burden then shifted to McKenna to show that each reason was pretextual. *Anderson*, 458 S.W.3d at 643-44; *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). In other words, McKenna was required to show that each reason is false **and** that the real motivating reason for her discharge was age or race discrimination. *Chandler*, 376 S.W.3d at 814; *Baker Hughes Oilfield Operations, Inc. v. Williams*, 360 S.W.3d 15, 23-24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (observing in a race discrimination case that even if the plaintiff establishes that the employer's termination reason is false, the plaintiff must still show that the employer discriminated against him or her because of a protected status).

### C. McKenna Failed to Raise a Fact Issue on Her Pretext Claim

#### 1. Disagreement with the employer's decision is no evidence of pretext

As a threshold issue, that McKenna disagrees with Baylor's decision to terminate her does not establish pretext. *Chandler*, 376 S.W.3d at 814; *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 522 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (noting that appellant's subjective belief regarding reason for discharge was insufficient to create a genuine issue of material fact); *see also Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory

ones."); *Flournoy v. Campbell Concrete & Materials, LLC*, No. H-09-3894, 2011 WL 722614, at \*7 (S.D. Tex. Feb. 22, 2011) (noting that Title VII is "not aimed at redressing errors of perception and managerial judgment" and that "this court will not second guess [employer's] business decision").

### 2. McKenna also failed to raise a fact issue on her claim that she was treated differently

As McKenna acknowledges (AB 19), to show she was treated less favorably than similarly situated persons outside of her protected class, she must show that the conduct committed "that drew the adverse employment decision must have been '***nearly identical***' to that of the proffered comparator." *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citation omitted) (emphasis added); *see also Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 900 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (someone is "similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct"). Indeed, as the Fifth Circuit held in *Lee v. Kansas City & Southern Railway Co.*, 574 F.3d 253 (5th Cir. 2009):

> [W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under "nearly identical circumstances." ***The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and <u>have essentially comparable violation histories</u>.***

*Id.* at 259-60 (footnotes omitted) (emphasis added); *see also Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917-18 (Tex. 2005) (per curiam); *Baker Hughes Oilfield Operations, Inc.*, 360 S.W.3d at 27.

However, McKenna's application of the law to her facts is incorrect.

First, McKenna claims that her colleagues were not written up for delinquent chart reviews, citing to her deposition and her affidavit. AB 4, 17 (citing CR315, 484). But her own testimony refutes this argument, as she admitted that she does not know whether the other midlevel providers who, like her, received emails from Harris that they were behind in their chart reviews, remained delinquent in their chart reviews following Harris' email. CR315-16. For that same reason, McKenna's claim that her colleagues were not required to work an additional shift to bring their chart reviews current (AB 17) fails as she does not know whether they, unlike her, heeded Harris' emails and became current on their chart reviews.

Next, McKenna claims that none of her colleagues were discharged for failure to meet the two-patients-per-hour requirement. AB 18, 20. But that is not why she was discharged. Instead, McKenna's discharge was the culmination of many events, including disciplinary issues and productivity deficiencies. CR179, 202, 453. Thus, whether other midlevel providers also did not meet the two-patient-per-hour goal, McKenna's mantra (AB 11, 18-20), is not probative of whether McKenna was treated less favorably than others in nearly identical

circumstances. *Lee,* 574 F.3d at 260; *Navy,* 407 S.W.3d at 900; *Baker Hughes Oilfield Operations, Inc.*, 360 S.W.3d at 27.

McKenna then lobs a series of "facts" that she claims should have defeated summary judgment on her discrimination claims. For example, she argues that she was the only employee "punished" by having to work a shift without pay. AB 20. But as McKenna was a salaried employee (CR123), she was never paid for any shift.[12] Regardless, McKenna did not raise this "fact" below in the context of her discrimination claim (in her summary judgment response), but only raised it in support of her breach of contract claim (*e.g.*, CR252, 287) and therefore cannot do so now. *Anderson*, 458 S.W.3d at 645.

Similarly unavailing is McKenna's claim that she was treated less favorably because another employee was paid extra for working extra shifts. AB 20. First, there is no record cite for this claim, but even if there were, the circumstances, as McKenna herself has described them, are not comparable or "nearly identical." As pointed out to the trial court (again, in the context of McKenna's breach claim), Baylor may have paid midlevel providers who ***chose*** to work extra shifts additional

---

[12] As noted *supra* in n.3, the uncontroverted summary judgment evidence established that midlevel providers are expected to work a set number of hours annually. CR171. Time spent working clinical shifts in the Emergency Center treating patients, vacation time, holiday time, and time spent performing administrative and academic duties are counted toward the annual, hourly expectation. CR188. McKenna was a salaried employee. CR123. Her pay was never docked, and she received the same amount of pay regardless of the number of shifts she worked. CR123, 174.

compensation, but McKenna was **required** to work an additional shift because she had not completed her chart reviews.  CR74.

McKenna then claims Baylor's reasons were pretextual because she did not conduct herself in an unprofessional manner and other employees agreed she acted professionally.  AB at 20-21; *see also id*. at 6.  But all this proves is that Baylor might have reached a wrong conclusion about whether McKenna should have been terminated, which even when accepted as true for summary judgment purposes, is not probative of a discrimination claim, as this Court has previously held. *Chandler*, 376 S.W.3d at 819 ("'The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.'") (citation omitted); *id*. at 820 (employee's "'own conclusory allegation that he did not behave inappropriately is irrelevant") (citation omitted); *Carlton v. Houston Cmty. Coll.*, No. 01-11-00249-CV, 2012 WL 3628890, at *14 (Tex. App.—Houston [1st Dist.] Aug. 23, 2012, no pet.) (mem. op.) ("Plaintiffs' subjective belief that HCC's evidence is false and its reasons pretextual, sincere as that belief may be, does not create a fact issue to defeat summary judgment.").

McKenna's reference to Baylor's decision to hire a 25-year old African American—graduating fellow Ms. Christie—without interviewing another candidate (AB 21-22) also does not demonstrate error by the trial court in granting Baylor's motion.  *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 188 n.17

(S.D.N.Y. 2013) ("[R]eplacement by a younger worker, standing alone, is insufficient to show pretext."); *see also Fago v. City of Hartford*, No. 3:02-cv-1189-AHN, 2006 U.S. Dist. LEXIS 14911, at *20 (D. Conn. Mar. 31, 2006) (granting summary judgment finding fact that plaintiff replaced by someone outside of protected class not sufficient to maintain discrimination claim in light of legitimate, non-discriminatory reason for adverse action). Moreover, it is uncontroverted that Christie's transition from part-time fellow to full-time employee was separate and distinct from McKenna's termination. CR185-86, 239-40; *see also* CR465-66. And, unlike McKenna, Christie was one of the Emergency Medicine Section's top performers. CR186. Thus, McKenna's frequent references to Baylor's hiring of Christie, a graduating Baylor fellow, is no evidence of pretext and was thus incapable of defeating Baylor's summary judgment motion.

Finally, McKenna's chart identifying the names of her former colleagues, their hire dates, birth dates and race (AB 23) also does not evidence that she was treated less favorably under nearly identical circumstances. *Lee,* 574 F.3d at 260; *Navy,* 407 S.W.3d at 900; *Baker Hughes Oilfield Operations, Inc.*, 360 S.W.3d at 27-31. Indeed, it is difficult to know the point McKenna is attempting to make. Her chart certainly fails to show the necessary similarities between her circumstances (i.e., cumulative conduct that led to her discharge) and those of the

employees whom she lists to make any meaningful comparison.[13] *Baker Hughes Oilfield Operations, Inc.*, 360 S.W.3d at 27.

In short, summary judgment was correctly granted on McKenna's age and race discrimination claims.

## II. The Trial Court Correctly Granted Summary Judgment on McKenna's Libel Claim[14]

Baylor moved for summary judgment on McKenna's libel claim on the bases that (1) the statements at issue were true, (2) the claim was time barred, and (3) the statements were protected by the qualified privilege, and McKenna had no evidence of malice, which is necessary to refute the privilege. CR94-104. The summary judgment can be supported on any of these bases. *FM Props. Operating Co.*, 22 S.W.3d at 872.

---

[13] In her statement of facts (AB 3), McKenna notes that she was labeled "old school" but she does not repeat this point in her argument. Regardless, such a remark is insufficient to raise a fact issue on her discrimination claim. *Anderson*, 458 S.W.3d at 644-45 ("[s]tray remarks" are no evidence of an intent to discriminate); *see also Kirkpatrick v. Pfizer, Inc.*, 391 F. App'x 712, 720 (10th Cir. 2010) (holding "old school" comment to be a stray remark and too ambiguous to be evidence of age discrimination); *Heck v. Am. Multi-Cinema, Inc.*, No. 07-4915(MLC), 2009 WL 540685, at *11 (D.N.J. Mar. 4, 2009) (finding comments including references to the plaintiff as "old school" insufficient to establish pretext for discrimination). Moreover, there is no evidence linking this alleged comment to an employment decision of any kind, which is fatal to her claim. *Chandler*, 376 S.W.3d at 816, 821-22 (affirming summary judgment for employer and noting that plaintiff presented no evidence that alleged comments were made close to the time of the adverse employment issue or were made by persons who had authority to make employment decisions or to influence employment decision).

[14] Libel is defamation expressed in written form. Tex. Civ. Prac. & Rem. Code Ann. § 73.001; *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.)

58615585

**A.** **Summary Judgment Should Be Affirmed Because McKenna Did Not Dispute the Truthfulness of the Statements and She Failed to Raise a Fact Issue on Her Self-Publication Theory**

**1.** **McKenna did not contest the truthfulness of the statements**

Baylor moved for summary judgment on the bases that McKenna had no evidence that any of the statements made by Baylor were false, and that as a matter of law, the statements were true. CR71, 98-100.

McKenna's response to Baylor's summary judgment on her libel claim spanned five pages. CR283-87. While she acknowledged Baylor moved for summary judgment on the basis that the statements at issue were true or substantially true (CR283), she did not counter Baylor's assertion that the statements were in fact true or substantially true. Instead, McKenna's arguments were confined to attempting to refute Baylor's claim of privilege and demonstrating the applicability of the relation back doctrine. CR283-87.

It follows that summary judgment on McKenna's libel claim was required. Tex. Civ. Prac. & Rem. Code § 73.005 ("The truth of the statement in the publication on which an action for libel is based is a defense to the action."); *Randall's Food Markets, Inc. v. Davis*, 891 S.W.2d 640, 646 (Tex. 1995) ("Truth is a complete defense to defamation."); *see also* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Easley v.*

*Members Ins. Grp.*, 828 S.W.2d 39, 41 (Tex. App.—Houston [14th Dist.] 1991, no writ) ("Because appellant chose not to file a response to appellee's motion for summary judgment, there were no fact issues to determine.").[15]

### 2. McKenna failed to raise a fact issue on her self-publication theory (assuming *arguendo* the claim is cognizable)

It is unclear whether McKenna is seeking to overturn the trial court's judgment on the basis that she self-published the alleged libelous statements in the course of seeking employment, a claim asserted in her petition. CR66. Her self-publication is not listed among the actionable statements identified in her appellate brief (AB 25, listing alleged libelous statements), but there is mention of this assertion in the context of her relation back argument (AB 31). To the extent McKenna is asserting self-publication as a basis to overturn the judgment, her argument fails.

First, neither the Texas Supreme Court nor this Court have recognized a self-publication defamation theory. *See Rincones v. WHM Custom Servs.*, 457 S.W.3d 221, 246-47 (Tex. App.—Corpus Christi 2015, pet. filed) (noting that the Texas Supreme Court has never recognized the theory). Nor should the theory be

---

[15] Because McKenna did not dispute Baylor's truth defense, the Court need not consider her appellate argument that the statements to other midlevel providers set forth in the Garey Email that she was terminated for misconduct were not true either because Baylor told the EEOC that she was terminated for performance reasons or because, according to McKenna, she did not engage in any misconduct as defined in Baylor's Policies and Procedures manual. AB 24-26. In any event, these alleged facts do not controvert the truth of the statement that McKenna's termination was indeed changed from performance to misconduct based on her conduct at and after the termination meeting.

recognized, as doing so would allow an employee who disagrees with her employer's reasoning for discharge, to create an actionable tort merely by making a defamatory statement herself to a third party regarding the circumstances of her termination. *See Lyle v. Waddle*, 144 Tex. 90, 94, 188 S.W.2d 770, 772 (1945) (plaintiff cannot recover for defamation if the statement about which the plaintiff complains was "authorized, invited or procured by the plaintiff").

Moreover, the majority of intermediate courts which have recognized the self-publication theory do so only in very narrow circumstances—where the plaintiff can prove she was unaware of the alleged defamatory nature of the communication at the time she published it to third parties. *Rincones*, 457 S.W.3d at 247 (collecting cases); *see also Austin*, 118 S.W.3d at 499 (finding that employee's argument that her reasons for termination were false negated her self-defamation claim as a matter of law). As Baylor pointed out below (CR100), McKenna's self-publication theory failed because she believed the statements were not true when she made them. *Rincones*, 457 S.W.3d at 246-47; *Austin*, 118 S.W.3d at 499. In any event, self-publication is not actionable under Texas law.

### B. McKenna's Libel Claim Was Time-Barred

A plaintiff must file and serve her defamation lawsuit within one year of the publication of the alleged defamatory statement. *See* Tex. Civ. Prac. & Rem. Code

§ 16.002(a); *Martinez v. Hardy*, 864 S.W.2d 767, 774 (Tex. App.—Houston [14th Dist.] 1993, no writ).

The one-year limitations period begins to run on the "***last day of the mass distribution*** of copies of the printed matter." *Holloway v. Butler,* 662 S.W.2d 688, 692 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (emphasis added). "On that date, the publisher of the statement has made the libelous matter available to his intended audience and the tort is complete." *Stephan v. Baylor Med. Ctr. at Garland*, 20 S.W.3d 880, 889 (Tex. App.—Dallas 2000, no pet.).

McKenna amended her petition to include her libel claim on May 19, 2014. CR19, 26-29. All of the alleged libelous statements are barred by limitations as all statements ***predate*** May 19, 2013.

McKenna does not contest that each of the alleged defamatory statements were published more than one year before she asserted her libel claim. Instead, she asserts that the relation back principal should have saved them from the limitations bar. AB 27-32. The trial court correctly rejected this argument.

The "relation back" doctrine enables a plaintiff to add a new claim after the statutory limitations period has expired ***only*** if common operative facts unite the original and the new claim and at the time the original claim was filed, the new claim was not already time-barred:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation

when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code § 16.068.

Here, the following three alleged libelous statements were time-barred when McKenna filed her Original Petition on December 20, 2012 (CR4), and thus cannot be saved by the relation back doctrine:

- Judy Garey's October 31, 2011 email to members of the Emergency Medicine Section notifying them of McKenna's termination for misconduct (Garey Email). CR60, 231.

- Judy Garey's November 2, 2011 termination letter to McKenna. CR234.

- Baylor's alleged statements to the TWC Unemployment Division in November 2011 that McKenna was terminated for misconduct. CR247.

Tex. Civ. Prac. & Rem. Code § 16.068; *Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946-47 (5th Cir. 2014).

Moreover, *all* of the alleged libelous statements at issue are factually distinct from her discrimination claims. *See* Tex. Civ. Prac. & Rem. Code § 16.068. The facts asserted in McKenna's Original Petition involve events and conduct that occurred *during* her employment through her termination. CR6-7, ¶¶ 17-24. In contrast, the facts asserted in her Amended Petition to support her libel claim arise from events that occurred *after* her termination. *See* CR26, 65-66. In other words,

McKenna's Amended Petition purported to add a completely new set of facts as well as new grounds for liability that were based on an entirely new and different occurrence. *See Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 896, 901 (5th Cir. 2012) (Texas law) (holding defamation claims asserted in amended petition did not relate back to the original petition asserting discrimination claims because the claims were factually distinct); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. App.—Austin 2007, pet. denied) (declining to employ relation back doctrine because each defamation claim is treated as a separate transaction with a separate injury); *see also Waddill v. Phi Gamma Delta Fraternity Lambda Tau Ch. Tex. Tech Univ.*, 114 S.W.3d 136, 144 (Tex. App.—Austin 2003, no pet.) (holding plaintiff could not relate back his amended defamation claim that involved conduct that occurred after the events made the basis of his original claim). Thus, the trial court did not err in rejecting McKenna's attempt to invoke the relation back doctrine.

McKenna's efforts to distinguish *Texas Disposal Systems Landfill* and *Waddill* (AB 28, 30) fail. She argues that in *Waste Management*, the claim of defamation did not occur after the original petition had been filed, and in *Waddill*, the two claims arose over a year apart and were unconnected. But McKenna ignores the reason that Baylor cited these cases, is that their holdings, consistent with the statute, that claims will not be saved from limitations where the amended

petition purports to add a completely new set of facts as well as new grounds for liability based entirely on new and different occurrences.  CR97.

In sum, because McKenna cannot show that her libel claim relates to events that happened ***during*** her employment, which was the basis for her original petition and instead arise from statement made ***after*** her termination, the savings doctrine does not apply here.  And it makes no sense that it would.  McKenna's original petition was based on discrimination, which claim necessarily concerns events that occurred ***during*** employment, while her libel claim arises from ***post-termination*** events.  CR4, 58.  Indeed, it is hard to imagine any set of facts where a former employer could discriminate against the former employee after the employment relationship ended.  The term "transaction or occurrence" simply cannot be stretched to include the entirely separate events that are the grounds for McKenna's libel claims.

### C. As a Matter of Law, Baylor Proved the Statements Were Protected by a Qualified Privilege

Yet another basis on which the trial court's summary judgment can be affirmed is the application of qualified privilege.  *See Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) ("We have recognized that defamation actions necessarily inhibit free speech, and, thus, the qualified privilege offers an additional safeguard, even in cases of private, non-political speech.").  The qualified "privilege remains intact as long as communications pass only to persons

having an interest or duty in the matter to which the communications relate."
*Randall's*, 891 S.W.2d at 646.

### 1. The statements here are protected by the privilege

Many cases have applied the privilege to communications between the employer and the plaintiff's former colleagues. As this Court itself has held "communications between company principals and employees, including communications concerning the termination of an employee, have been held to be protected by this privilege." *Henriquez v. Cemex Mgmt., Inc.*, 177 S.W.3d 241, 253 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (collecting cases).

Indeed, Texas courts routinely conclude that the qualified privilege attaches to statements about why an employee has been discharged. *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009) (finding that an employer's statement to "'individuals who worked directly with [the plaintiff]'" was protected by the privilege) (citation omitted); *Austin*, 118 S.W.3d at 497 (statements made to supervisors and HR in the course of investigating insubordination incident were privileged); *Welch v. Doss Aviation, Inc.*, 978 S.W.2d 215, 224 (Tex. App.—Amarillo 1998, no pet.) (concluding that circulation of memo to pilots explaining why another pilot instructor had been fired was within the scope of the employer's qualified privilege); *see also Patrick v. McGowan*, 104 S.W.3d 219, 224 (Tex.

App.—Texarkana 2003, no pet.) (concluding that statements made to other employees are generally privileged unless they are made with malice).

Second, communications between employers and the TWC regarding an employee's unemployment claims are also protected by the privilege. *Rincones*, 457 S.W.3d at 245-46 (statements to the TWC were "absolutely privileged [and] cannot serve as a basis for liability"); *Majdzadeh-Koohbanani v. Jaster-Quintanilla Dallas, LLP*, No. 3:09-CV-1951-G-BK, 2010 WL 5677911, at *9 (N.D. Tex. Dec. 20, 2010) (holding employer's statements to the TWC were protected by qualified privilege because the TWC had an interest in learning the reasons for the plaintiff's termination so it could determine whether to pay unemployment benefits).

The privilege indisputably applies here to all the statements at issue. Indeed, it is hard to imagine a more perfect factual basis for applying the privilege. Each statement concerned McKenna's termination for misconduct communicated to people with an interest in her termination, i.e., her midlevel colleagues, her supervisors, HR personnel, and the TWC. CR102, 117, 119, 120, 124, 127, 130-31, 178, 194.

McKenna appears to argue that the privilege does not apply because the statements at issue were not made "during an investigation." AB 33.[16] But that argument erroneously seeks to constrain the scope of the privilege. *See Randall's*, 891 S.W.2d at 646 (qualified privilege applies when statements were communicated to those who had an interest in the matter to which the communications relate); *Frakes*, 579 F.3d at 430.

### 2. McKenna waived her claim that the statements were made with malice

The qualified privilege is lost if the declarant made the statements with actual malice. *Randall's*, 891 S.W.2d at 646. Actual malice, in the defamation context, means "'the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.'" *Burbage*, 447 S.W.3d at 254 (citation omitted).

Below, Baylor sought summary judgment on the basis that McKenna was unable to defeat its privilege claim with evidence of malice, an issue on which she had the burden of proof. *Id.* (once a defendant establishes the privilege, "the burden shifts to the plaintiff to prove that the defendant made the statements with actual malice"); Tex. R. Civ. P. 166a(i); *see* CR71, 102-04. McKenna failed to offer any evidence of malice, instead erroneously presuming that the burden was

---

[16] Baylor says "appears" because this argument is under McKenna's heading that "Baylor Failed to Show The Libelous Statement Was Made [Without] Malice." AB 32-33.

on Baylor to prove the absence of malice (CR284), an argument that reappears in her appellate brief (AB 32). For this reason alone, her libel claim fails as a matter of law and the trial court correctly granted summary judgment.

But even if entertained, there was no malice here as the statements at issue were true, a point which is uncontested. Again, Baylor made the decision to re-categorize McKenna's termination as "misconduct" based upon McKenna's conduct witnessed by members of Baylor's Employee Relations Department at the termination meeting. Baylor's Human Resources Department believed the statements regarding McKenna's behavior at her termination were true (*see* above at 24) meaning they were not published with reckless disregard for the truth. *See Randall's*, 891 S.W.2d at 647 ("Randall's established an absence of malice with regard to these statements by conclusively proving that its employees had reasonable grounds to believe that their statements were true.").

In sum, the trial court correctly granted summary judgment on McKenna's libel claim.

## III. The Trial Court Correctly Granted Summary Judgment on McKenna's Breach of Contract Claim

McKenna's breach of contract claim was premised on Baylor's offer for post-termination pay. CR68. Baylor moved for summary judgment on the basis that a valid enforceable contract had not been formed because of the lack of consideration. CR104-05.

The requirement of consideration, the mutual exchange of promises, is hornbook law. Samuel Williston, A Treatise on the Law of Contracts § 23, at 51 (Walter H.E. Jaeger ed., 3d ed. 1957); Restatement (Second) of Contracts § 17 (1981). Countless Texas courts have applied this principle. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991); *Tex. Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970); *Domingo v. Mitchell*, 257 S.W.3d 34, 40 (Tex. App.—Amarillo 2008, pet. denied); *see also Iacono v. Lyons*, 16 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("A contract must be based upon a valid consideration, in other words, mutuality of obligation.").

McKenna claims she raised a fact issue on whether a supposed contract for pay and benefits was supported by consideration. AB 34-37. McKenna cites to her affidavit wherein she claims that she was told she would be paid her salary and benefits for 30 days if she promised not to come onto the premises or speak to her fellow midlevel providers for 30 days. AB 36 (citing to her affidavit at CR485, ¶ 11). First, McKenna's response to Baylor's motion included no citation to any exhibit in support of the contention that she was told she would continue to receive her salary provided she did not return to the premises or speak with her former colleagues. CR289. For that reason alone, the summary judgment should be affirmed. *Gallien v. Goose Creek Consol. Indep. Sch. Dist.*, No. 14-11-00938-CV, 2013 Tex. App. LEXIS 2790, at *10 (Tex. App.—Houston [14th Dist.] Mar. 19,

2013, pet. denied) (mem. op.); *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238–39 (Tex. App.—San Antonio 2006, no pet.); Tex. R. Civ. P. 166a(c).

Second, as Baylor pointed out below, McKenna's affidavit is flatly refuted by her deposition testimony (three separate depositions) where she discussed in detail the events during that meeting and never mentioned the alleged promise of continued pay provided she not return to the premises or speak with her colleagues. SCR66.

Simply put, McKenna's breach of contract claim was properly disposed of by summary judgment.

### CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, Appellee, Baylor College of Medicine, respectfully requests that this Court affirm the trial court's summary judgment. Appellee also prays for such further relief to which it may be entitled.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By:        */s/ Joy M. Soloway*
           Shauna Johnson Clark
           State Bar No. 00790977
           *shauna.clark@nortonrosefulbright.com*
           Joy M. Soloway
           State Bar No. 18838700
           *joy.soloway@nortonrosefulbright.com*
           Heather L. Sherrod
           State Bar No. 24083836
           *heather.sherrod@nortonrosefulbright.com*
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

**Counsel for Appellee Baylor College of Medicine**

## CERTIFICATE OF WORD COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned counsel – in reliance upon the word count of the computer program used to prepare this document – certifies that this brief contains 8,562 words, excluding the words that need not be counted under Texas Rule of Appellate Procedure 9.4(i)(1).

        */s/ Joy M. Soloway*
        JOY M. SOLOWAY

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October 2015, Appellees served a copy of this motion by electronic service (via FileTime) upon the following counsel of record:

Mr. Glenn W. Patterson, Jr.
Attorney at Law
11 Greenway Plaza, Suite 2820
Houston, Texas 77046
**Via e-File (*glenn@patterson-adr.com*)**
**Counsel for Appellant Vicky McKenna**

*/s/ Joy M. Soloway*

JOY M. SOLOWAY